El Juez Asociado Señor Negrón García no intervino.

RAFAEL QUIÑONES IRIZARRY y MIGDALIA ORTIZ OLIVO, demandantes y recurrentes, *v.* SAN RAFAEL ESTATES, S.E. y VIFONT BUILDERS, INC., demandados y recurridos; DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR.

*Número:* CE-95-35 *Resuelto:* 30 de junio de 1997

*Rafael Quiñones Cruz*, abogado de la parte recurrente; *José R. Pérez-Hernández*, de *Pierluisi & Mayol-Bianchi*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

¿Tiene poder el Departamento de Asuntos del Consumidor (en adelante D.A.Co.) para otorgar una indemnización en concepto de daños y perjuicios a los consumidores por la omisión por parte de constructoras de viviendas de reparar sus vicios de construcción? En el caso de autos, se nos solicita que revoquemos la sentencia emitida por el entonces Tribunal Superior, Sala de San Juan, en la cual se redujo la cuantía que en concepto de daños otorgó D.A.Co. a los esposos Rafael Quiñones Irizarry y Migdalia Ortiz contra San Rafael Estates, S.E. y Vifont Builders, Inc. En ésta se resolvió que D.A.Co. tiene poder para otorgar indemnización por daños y perjuicios en reclamaciones de vicios de construcción; se redujo los daños de siete mil quinientos dólares ($7,500) a mil doscientos cincuenta dólares ($1,250), y se eliminó la partida impuesta por la agencia en concepto de honorarios de abogados.

Por entender que D.A.Co. tiene la facultad en ley para indemnizar por los daños y perjuicios sufridos por los consumidores, confirmamos una parte de la sentencia recurrida. No obstante, revocamos la parte del dictamen que redujo la indemnización y eliminó los honorarios de abogado.

I

En 1991 los esposos Rafael Quiñones Irizarry y Migdalia Ortiz (en adelante los compradores) suscribieron un contrato uniforme de compraventa con la recurrida San

Rafael Estates, S.E. (en adelante San Rafael), para la adquisición de una casa del proyecto San Rafael Estates de Bayamón por la suma de ciento cuatro mil novecientos dólares ($104,900). La constructora del proyecto fue la recurrida Vifont Builders, Inc. (en adelante Vifont). El pago del pronto otorgado por los compradores ascendió a tres mil dólares ($3,000).

En julio de 1992 se concertó una cita para que los compradores realizaran la inspección final de la propiedad. Como resultado de dicha inspección, estos últimos prepararon una lista con las deficiencias que a su juicio presentaba la propiedad: (1) techo agrietado con filtraciones; (2) losetas huecas y de distinto color; (3) nivel del terreno corre hacia la estructura; (4) puerta de la entrada principal no es de primera calidad; (5) puertas interiores no son de embuia; (6) losetas no son de primera calidad (defecto de fábrica); (7) se usaron pedazos de sobrantes en zócalos de la sala; (8) terminación deficiente de zócalos en puertas interiores; (9) tapa de inodoro del *master room* con moho; (10) marco del *vanity* con moho; (11) losas sobrepuestas (entrada principal).

Mediante una comunicación escrita, San Rafael le indicó a los compradores que los defectos 1–5, 7 y 11 señalados no procedían por alegadamente no constituir vicios de construcción de acuerdo con el Reglamento Núm. 2268 para Regular las Distintas Actividades que se Llevan a Cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico de 16 de septiembre de 1977 (Reglamento del Negocio de la Construcción). En cuanto al defecto Núm. 6 alegó que sólo se identificaron seis (6) losas con defectos de fábrica, las cuales se habían reemplazado. En relación con los defectos Núms. 8–10 les notificó que estos habían sido corregidos.

Inconformes con dicha comunicación, los compradores presentaron una querella ante D.A.Co. para reclamar básicamente los mismos defectos en la unidad e incluir, además, los daños y perjuicios que sufrieron por causa de la falta de acción o por la omisión de la parte querellada

recurrida. Dos (2) días después de presentada la querella, los compradores fueron citados al Banco Central para la firma de las escrituras de compraventa e hipoteca. Éstos asistieron a la cita pero se negaron a firmar las escrituras. Como resultado, a solicitud de San Rafael se presentó un acta notarial en la se hizo constar que los compradores rehusaban firmar las escrituras porque alegaban que la vendedora estaba pendiente de corregir una serie de defectos.

San Rafael notificó por escrito a los compradores que tenían quince (15) días para otorgar las escrituras, so pena de la resolución del contrato. Transcurrido el mencionado término, San Rafael notificó la resolución del contrato uniforme de compraventa y la devolución del depósito presentado, luego de retener el 2% del precio de venta. Los compradores, entonces, enmendaron su demanda ante D.A.Co. para solicitar el cumplimiento específico del contrato; una indemnización por veinte mil dólares ($20,000) por los daños y angustias mentales sufridas, y la paralización de la venta de la vivienda hasta la adjudicación final de la querella.

Posteriormente, D.A.Co. convocó y celebró una vista administrativa en la cual San Rafael y Vifont presentaron como testigo perito al Ing. Ángel L. Vázquez. Este último rindió un informe en el cual detalló los defectos que fueron alegadamente reparados por las recurridas y los que entendía que no constituían vicios de construcción.

Por su parte, un técnico de D.A.Co. realizó una inspección en la residencia y rindió un informe sobre el particular. Detalló todos los defectos de construcción que presentaba la vivienda y calculó en cuatro mil trescientos noventa y cinco dólares con cuarenta y ocho centavos ($4,395.48), el costo aproximado de la corrección de los defectos.

A base de la prueba desfilada, D.A.Co. determinó que sólo cuatro (4) defectos cualificaban como vicios de construcción, según el Reglamento del Negocio de la Construcción: (1) los defectos del techo y plafones interiores (grietas

y manchas de humedad); (2) los zócalos añadidos; (3) la deficiencia del terreno (el declive inapropiado y los zanjones mal construidos); (4) los azulejos de la cocina con pequeños hoyos en el esmalte (aproximadamente doce (12) losas defectuosas).

D.A.Co. determinó que la actuación de los compradores de rehusarse a firmar las escrituras estuvo justificada, ya que para la fecha cuando fueron citados, la constructora no había reparado de forma eficiente los defectos antes mencionados, condición que estaba contenida en el propio contrato uniforme de compraventa como válida para negarse los compradores a firmar la escritura de compraventa. Concluyó que los compradores no violaron o incumplieron cláusula alguna del contrato que hubiese dado lugar y facultado a la vendedora a dar por resuelto éste, y ordenó el cumplimiento específico del contrato. A su vez, estimó en dos mil quinientos dólares ($2,500) la indemnización que por daños y perjuicios estaban obligadas a satisfacer solidariamente San Rafael y Vifont. Sin embargo, entendió que los compradores no habían ofrecido suficiente prueba sobre las angustias mentales. D.A.Co. estimó en tres mil trescientos noventa y siete dólares ($3,397) el costo de la reparación de los defectos, suma que debía ser entregada a los compradores si San Rafael y Vifont no los corregían. En reconsideración, se aumentó la cuantía de indemnización por daños a siete mil quinientos dólares ($7,500); se impuso honorarios de abogado a San Rafael y a Vifont por mil dólares ($1,000), y se determinó que la suma de mil seiscientos ocho dólares ($1,608) que éstas retuvieron del pronto prestado por los compradores, le sería acreditado al precio de venta vigente al momento de la urbanizadora citar a los compradores para el otorgamiento de las escrituras.

San Rafael y Vifont presentaron un escrito de revisión ante el entonces Tribunal Superior en el que alegaron error por parte de D.A.Co. al adjudicar y conceder compensación por sufrimientos e inconvenientes; al conceder por daños y luego aumentar la compensación; al compensar a Migdalia

Ortiz cuando no declaró en la vista; al conceder honorarios de abogado, y al ordenar el cuplimiento específico del contrato (venta de la propiedad a los esposos Quiñones-Ortiz).

En la sentencia recurrida, el tribunal de instancia determinó que D.A.Co. poseía la facultad para imponerle a San Rafael y a Vifont una suma razonable para el pago de los desembolsos hechos por los compradores por el incumplimiento del contrato y los vicios de construcción. Determinó que dicha facultad y actuación respondían con eficacia a los propósitos legislativos inspiradores de las leyes aplicables. Además, estimó que cuando D.A.Co. entiende que ese remedio en daños es necesario y apropiado para efectuar los propósitos de la ley, éstos proceden y que, en el caso de autos, no proveer un servicio adecuado en el área de construcción de viviendas ameritaba la imposición de compensación por daños. Por otra parte, resolvió que D.A.Co. erró al aumentar en reconsideración la cuantía de daños de dos mil quinientos dólares ($2,500) a siete mil quinientos dólares ($7,500). De esta manera redujo la compensación concedida a mil doscientos cincuenta ($1,250)(¹) y, a su vez, revocó la imposición de honorarios de abogado al concluir que San Rafael y Vifont no entorpecieron los procesos o los dilataron innecesariamente.

Inconformes, los compradores presentaron un recurso de *certiorari* en el cual alegaron, en síntesis, que erró el tribunal de instancia al determinar que del expediente administrativo no surgía prueba suficiente para que en reconsideración D.A.Co. modificara su resolución original y procediera a aumentar la cuantía otorgada en concepto de daños, y al concluir que no existía evidencia sobre las angustias mentales. A su vez, alegan que erró el tribunal de instancia al eliminar los honorarios de abogado impuestos por D.A.Co. contra las recurridas. Con el beneficio de los

---

(¹) La sentencia inicial redujo la cuantía a dos mil quinientos dólares ($2,500). Luego, en reconsideración, la bajó a la mitad, mil doscientos cincuenta ($1,250), al concluir que no le correspondía indemnización alguna a Migdalia Ortiz por cuanto ésta no testificó en la vista administrativa.

alegatos de las partes, pasemos a resolver la controversia ante nos.

## II

Los compradores plantean que el tribunal de instancia erró al reducir las cuantías que en reconsideración impusiera D.A.Co. en concepto de indemnización por los daños sufridos por la omisión de San Rafael y Vifont en reparar los vicios de construcción. Para analizar la corrección de la actuación del tribunal, debemos evaluar si D.A.Co. tiene la facultad en ley para otorgar indemnizaciones por daños y perjuicios sufridos por compradores de viviendas, que se enfrenten a la existencia de vicios de construcción que no han sido reparados por sus constructoras. Para este análisis debemos, en primer lugar, revisar el desarrollo de la doctrina de delegación de poder a las agencias administrativas para imponer daños. En segundo lugar, debemos revisar en específico las leyes y los reglamentos existentes sobre la construcción en Puerto Rico y, finalmente, determinar si la agencia encargada de poner dichas leyes y reglamentos en vigor tiene la facultad en ley para otorgar indemnización por daños.

A. Cuando las agencias administrativas ejercen su poder adjudicativo, realizan funciones análogas a las que realizan los tribunales.[2] Surge entonces la interrogante sobre si las facultades remediales propias de los tribunales deben ser ejercidas a su vez por las agencias administrativas para que éstas puedan hacer efectivo el proceso administrativo.

Entre los remedios judiciales tradicionales más importantes figura la concesión de indemnizaciones monetarias para compensar los daños sufridos. Aunque originalmente se tenía la concepción de que sólo los tribunales po-

---

[2] Véanse: *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 230 (1987); *Hernández Denton v. Quiñones Desdier*, 102 D.P.R. 218, 224 (1974).

dían conceder este tipo de remedio —pues se pensaba que la facultad de compensar por daños era el rasgo característico del ejercicio del Poder Judicial— hoy día se acepta como válida la delegación a las agencias del poder de otorgar compensación por daños, ya sea porque específicamente en la ley habilitadora de la agencia se le concede dicha facultad o porque esté consignado en su amplia facultad para conceder remedios. Véanse: B. Schwartz, *Administrative Law*, 3ra ed., Boston, Ed. Little, Brown and Co., 1993, págs. 96–97; D. Fernández, *Derecho Administrativo*, Colombia, Ed. Forum, 1993, págs. 96–97; *State v. Public Service Commission*, 259 S.W. 445, 447–448 (1924), delegación de poder como válida; *State Human Rights Commission v. Pauley*, 212 S.E.2d 77, 79–80 (1975); *County Coun., Montgomery Cty. v. Investors F. Corp.*, 312 A.2d 225, 245 (1973); *Jackson v. Concord Company*, 253 A.2d 793, 800 (1969); *NLRB v. Strong*, 393 U.S. 357, 359 (1969).

En el caso particular de Puerto Rico, varias leyes permiten a agencias administrativas otorgar compensaciones económicas. Así ocurre en la Ley del Sistema de Compensaciones por Accidentes del Trabajo para los casos de accidentes en el trabajo o de enfermedades ocupacionales. 11 L.P.R.A. sec. 1 *et seq.* A su vez, la Junta de Relaciones del Trabajo está facultada en la Ley de Relaciones del Trabajo de Puerto Rico para ordenar el pago de los salarios dejados de percibir, en el contexto de las prácticas ilícitas del trabajo. 29 L.P.R.A. sec. 61 *et seq.* Véanse: *Rivera v. Junta de Relaciones del Trabajo*, 70 D.P.R. 5, 13 (1949);. Fernández, *op. cit.*, págs. 98–99. Del mismo modo, la Comisión de Servicio Público está expresamente facultada para ordenar a las compañías de servicio público o a porteadores por contrato el pago por los daños y perjuicios sufridos como resultado de una práctica irrazonable o ilegal. 27 L.P.R.A. sec. 1107.

■ Este Tribunal ha validado la delegación que la Asamblea Legislativa ha hecho a un organismo adminis-

trativo de la facultad para conceder una indemnización por los daños sufridos, cuando la ley habilitadora de ese organismo así lo haya reconocido expresamente. *Rovira Palés v. P.R. Telephone Co.*, 96 D.P.R. 47 (1968) (autoridad de la Comisión de Servicio Público); *Aguilú Delgado v. P.R. Parking System*, 122 D.P.R. 261 (1988) (autoridad de D.A.Co. para compensar por daños sufridos a un vehículo o a la persona bajo la Ley para Regular el Negocio de Áreas para el Estacionamiento Público de Vehículos de Motor). Véase Fernández, *op. cit.*, pág. 100.

En otros casos, este Tribunal ha validado la adjudicación de compensación por daños, aun cuando la ley de la agencia no aludía a dicha facultad, siempre y cuando con dicha acción se adelantaran los propósitos de la ley. Véase *U.T.I.E.R. v. J.R.T.*, 99 D.P.R. 512, 525–526 (1970), en el que expresamos:

> ... Consideramos determinante ... que cuando la ley relaciona los remedios que la Junta puede conceder u ordenar en el curso de sus funciones, el propio estatuto expresa que dicha relación no es taxativa. ... La norma o límite legislativo que la Asamblea Legislativa impuso a la Junta sobre este particular es que *el remedio vaya dirigido a efectuar los propósitos de la ley*. Desde luego, esa amplia discreción que la ley le concede a la Junta para crear el remedio no es ilimitada; se ha dicho que el remedio debe ser apropiado o adecuado. (Citas omitidas y énfasis suplido.)

Finalmente, en el caso *Viajes Gallardo v. Clavell*, 131 D.P.R. 275 (1992), consideramos una reclamación contra una agencia de viajes, presentada en la Comisión de Servicio Público. El consumidor alegó negligencia por parte de la agencia al no cumplir lo ofrecido en la excursión y reclamó los daños sufridos por la familia que compró una excursión a la agencia, incluyendo un hurto. La Comisión declaró con lugar la querella y ordenó a la agencia el pago de dos mil dólares ($2,000) por los daños sufridos. Cabe señalar que el Art. 20 de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1107, autoriza a la Comisión a ordenar el importe por los daños y perjuicios sufridos como resultado de la práctica injusta, irrazonable o ilegal de la

compañía de servicio público o porteador por contrato. Este Tribunal resolvió que se trataba de una reclamación con relación directa y sustancial con el servicio público que prestaba la Comisión de Servicio Público, por lo que se requería el conocimiento especializado de dicho organismo administrativo para la solución y adjudicación de la reclamación. Por ello, la omisión de la agencia de seleccionar un lugar de hospedaje adecuado dio inicio a la cadena de eventos que ocasionó los daños al consumidor.

En resumen, hemos reconocido en nuestra jurisdicción la facultad de ciertas agencias administrativas para imponer indemnización por daños. Algunas tenían en su ley una delegación específica de ese poder. En otras, validamos la imposición de daños cuando estuviera relacionada con el servicio que prestaba la agencia y lo ejerciera para adelantar los propósitos de la ley. Pasemos entonces a revisar el origen del poder concedido a D.A.Co. para resolver las querellas sobre vicios de construcción.

B. Con el propósito de proteger a los compradores de vivienda se creó en 1967 la Oficina del Oficial de la Construcción mediante la Ley Núm. 130 de 13 de junio de 1967, según enmendada, 17 L.P.R.A. secs. 501–519 (en adelante Ley Núm. 130), Ley de la Oficina del Oficial de Construcción adscrita a la Administración de Renovación Urbana y Vivienda. De esta manera se le confirió poder al Oficial de la Construcción para, entre otras: expedir o revocar licencias a urbanizadores o constructores; llevar a cabo investigaciones e inspecciones; revisar los contratos de opción o promesa de compraventa o compraventa de viviendas, e investigar y adjudicar querellas sobre prácticas indeseables. Art. 4 de la Ley Núm. 130 (17 L.P.R.A. sec. 504). Una de las prácticas indeseables en el negocio de la construcción de viviendas incluida en la ley fue "[d]ej[ar] de corregir un defecto de construcción en una vivienda según éste sea definido por el reglamento puesto en vigor por el Oficial de Construcción". Art. 9(e) de la Ley Núm. 130 (17 L.P.R.A. sec. 509(e)).

En 1968 se creó la Administración de Servicios al Consumidor (en adelante A.Ser.Co.) mediante la Ley Núm. 148 de 27 de junio de 1968 (23 L.P.R.A. sec. 1001 *et seq.*). Este organismo se creó para "proteger, educar y representar al consumidor puertorriqueño y [...] velar por sus intereses". Exposición de Motivos de la Ley Núm. 148, *supra*, 1968 Leyes de Puerto Rico 460, 461. Se transfirieron a A.Ser.Co. las funciones y los deberes de la Oficina del Oficial de la Construcción. 23 L.P.R.A. sec. 1002. Entre las funciones básicas de A.Ser.Co. figuraban:

> [A]tender e investigar las querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía, [y] *tomar la acción correctiva que proceda en derecho* .... (Énfasis suplido.) 23 L.P.R.A. sec. 1004(8).

A su vez, se le otorgó el poder de:

> Interponer *cualesquiera remedios legales que fueren necesarios para hacer efectivos los propósitos de esta ley* y hacer que se cumplan las reglas, reglamentos, órdenes y determinaciones de la Administración. (Énfasis suplido.) 23 L.P.R.A. sec. 1005(b).

En 1971, mediante la Ley Núm. 100 de 24 de junio, 17 L.P.R.A. sec. 510, se enmendó el Art. 10 de la Ley Núm. 130 sobre el Oficial de la Construcción. Entre otras, se añadieron las causas que motivan la resolución del contrato de opción y de compraventa por parte del optante o el comprador, respectivamente. Una de estas causas consiste en "si al inspeccionar la vivienda, de estar ya construida, observa que la misma tiene defectos de construcción según éstos sean definidos en el reglamento que a tal fin promulgue el Director, y el constructor se niega a corregirlos al ser requerido para ello". Art. 10(f-5) y (h-2) Ley Núm. 100, *supra*, 17 L.P.R.A. sec. 510(f)(5) y (h)(2). De esta manera quedó establecida la facultad de A.Ser.Co. para imponer remedios legales en casos de reclamaciones por defectos en la construcción.

En 1973 se crea el Departamento de Asuntos del Consumidor mediante la Ley Núm. 5 de 23 de abril de

1973 (3 L.P.R.A. sec. 341 *et seq.*). En su Exposición de Motivos (1973 Leyes de Puerto Rico 16) se especifica que si bien existía legislación protectora del consumidor, resultaba necesario crear un departamento para el beneficio del sector consumidor, a nivel de gabinete, con el objetivo de garantizarle al consumidor la debida atención a sus problemas. Se le transfirieron a D.A.Co. todas las funciones, los poderes y los deberes de A.Ser.Co. y se suprimió dicha agencia. 3 L.P.R.A. sec. 341d(A)(a). De esta manera, los poderes y deberes de la Oficina del Oficial de la Construcción se transfirieron, a su vez, a D.A.Co. Entre estos poderes concedidos a D.A.Co. figuran:

> (d) Poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder *los remedios pertinentes conforme a derecho*, disponiéndose que las facultades conferidas en este inciso *podrá delegarlas el Secretario en aquel funcionario que él entienda cualificado para ejercer dichas funciones.*

> (i) Interponer *cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de esta ley* y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento. (Énfasis suplido.) 3 L.P.R.A. sec. 341e(d) e (i).

Posterior a la creación de D.A.Co., este Tribunal resolvió el caso *Hernández Denton v. Quiñones Desdier*, supra. En él se cuestionaba el alcance de A.Ser.Co. (hoy D.A.Co.) para adjudicar, sujeto a revisión por los tribunales, las querellas entre contratistas y compradores de viviendas defectuosas. En una querella presentada contra un contratista, A.Ser.Co. concluyó que éste incumplió el contrato y le ordenó reparar las filtraciones y otras imperfecciones o entregarle a la querellante mil ochocientos seis dólares con setenta y cinco centavos ($1,806.75), cantidad representativa del costo de las reparaciones. El contratista no acató la resolución del Director de A.Ser.Co. Este último recurrió al Tribunal Superior. Dicho foro resolvió que A.Ser.Co. no te-

nía facultad para adjudicar derechos antes de la entrada en vigor del Art. 6(g) de la Ley Núm. 148, *supra*, 3 L.P.R.A. sec. 341e(g), el cual facultaba a la administración a resolver y adjudicar querellas presentadas por consumidores.

Sin embargo, esta Curia, en una decisión de mucha importancia para los consumidores, resolvió que A.SER.CO. siempre tuvo, antes y después de la adición del citado inciso (g), poder para dictar órdenes correctivas y que tal poder podía ejercerse hoy día por D.A.Co. *Hernández Denton v. Quiñones Desdier,* supra, pág. 220. A su vez, resolvimos que tal concesión de poder para adjudicar querellas como la de autos, era constitucional. Establecimos:

> No existe disposición alguna de la Constitución del Estado Libre Asociado de Puerto Rico o de la de Estados Unidos que exija que únicamente los tribunales puedan entender en casos de la actual naturaleza. Desde hace más de sesenta años, el Tribunal Supremo de Estados Unidos validó la delegación a agencias administrativas del poder de imponer penalidades *United States* v. *Grimaud*, 220 U.S. 506 (1911). *Hernández Denton v. Quiñones Desdier*, supra, págs. 221–222.

Más adelante señalamos:

> Parte esencial de reformas a los sistemas de justicia en muchas jurisdicciones, [...] es *el reconocimiento de que organismos no judiciales deben atender asuntos que hasta cierto tiempo se consideraron de la competencia exclusiva de los tribunales.* (Escolio omitido y énfasis suplido.) Íd., pág. 223.

■ Luego de la creación de D.A.Co. fue necesario enmendar la Ley Núm. 130, creadora de la Oficina del Oficial de la Construcción. Todas las facultades y los poderes de esta oficina fueron transferidas a D.A.Co. Por esa razón, la Asamblea Legislativa estimó que era prudente uniformar el proceso de adjudicación de las querellas surgidas bajo la Ley Núm. 130, acorde con el procedimiento establecido en la ley que creó a D.A.Co. Se aclara:

> ... De esta forma se facilitará el proceso de adjudicación de las querellas que sobre prácticas indeseables del negocio de la construcción presenten los consumidores puertorriqueños. Además, se hace necesario que, *en la adjudicación de daños que*

*surjan en las querellas sobre incumplimiento de contratos o de-*
*fectos de construcción, la controversia sobre los daños se ventile*
*en la vía administrativa,* evitando así que el caso se ventile
nuevamente en los tribunales, retrasando la *concesión del re-*
*medio solicitado por el consumidor afectado.* La experiencia y
flexibilidad —libre de tecnicismos legales— del organismo ad-
ministrativo propicia una más rápida adjudicación de esta clase
de querella, por lo que no es necesario recargar a los tribunales
de justicia con reclamaciones que pueden resolverse por el or-
ganismo administrativo. ... No han de afectarse los derechos de
los consumidores, toda vez que la adjudicación de las querellas
ha de hacerse *conforme al derecho vigente.* (Énfasis suplido.)
Exposición de Motivos de la Ley Núm. 160 de 9 de junio de
1976, Leyes de Puerto Rico, págs. 527–528.

Debemos resaltar que mediante la Ley Núm. 160, *su-*
*pra,* se añadieron en el inciso (j) unas disposiciones sobre
las causas que motivan la resolución del contrato por parte
del urbanizador o constructor; la facultad del Secretario
del D.A.Co. para *adjudicar el monto de los daños* causados
al urbanizador y por los cuales recibiría una compensación
no mayor de la dispuesta en el contrato. Art. 10(j) de la Ley
Núm. 160, *supra,* 17 L.P.R.A. sec. 510(j). De esta manera
quedó plasmado en este inciso la facultad del Secretario
para adjudicar daños a favor del urbanizador o constructor.

Por su parte, D.A.Co. aprobó el Reglamento del Negocio
de la Construcción. Éste fue promulgado al amparo de la
autoridad conferida al Secretario de D.A.Co. por las cita-
das Leyes Núm. 5 y Núm. 130. En la Sec. 2(8) del Regla-
mento se faculta al Secretario de D.A.Co. a "investigar y
adjudicar las querellas radicadas sobre prácticas indesea-
bles en el negocio de la construcción; *concediendo los reme-*
*dios pertinentes conforme a derecho".* (Énfasis suplido.) Re-
glamento del Negocio de la Construcción, *supra,* pág. 4. A
su vez, en la Sec. 10 del referido Reglamento, *supra,* pág.
13, se establecen las "Prácticas Indeseables" en el negocio
de la construcción de vivienda incluyéndose en el inciso (J)
cuando el constructor:

(J) *Deje de corregir cualesquiera de los defectos de construc-*
*ción* que a continuación se enumeran o cualquier otra anorma-
lidad que no se encuentre aquí enumerada, pero que el Secre-

tario determine que es defecto de construcción ... dentro de un período de tiempo razonable según lo determine el Secretario. (Énfasis suplido.) Íd., pág. 15.

Examinadas las leyes relativas a la construcción en Puerto Rico, pasemos a analizar los poderes concedidos a D.A.Co. en este contexto.

■ C. De todas las leyes y reglamentos revisados podemos concluir que en nuestra jurisdicción hemos validado la delegación a las agencias administrativas de la facultad para otorgar compensación por daños y perjuicios. Básicamente hemos reconocido esta facultad en dos (2) instancias: cuando las leyes habilitadoras de las agencias conceden expresamente esa facultad y cuando, no estando claramente facultadas para imponer daños, dicho poder está implícito en la amplia facultad de confeccionar remedios en la implantación de la política pública de la ley, y si al así hacerlo se adelantan los intereses de la legislación que las creó.

■ En el caso de la construcción, desde la aprobación de la Ley Núm. 130 hasta la actual ley de D.A.Co. y el Reglamento del Negocio de la Construcción, se ha conceptualizado el dejar de reparar defectos de construcción de una vivienda, como una práctica indeseable por parte del constructor. Las agencias encargadas de poner en vigor esta legislación, primero A.Ser.Co. y hoy D.A.Co., han tenido la facultad expresa para tomar las medidas correctivas que procedan en derecho y la de interponer *cualquier remedio legal necesario para hacer efectivos los propósitos de la ley.* 3 L.P.R.A. sec. 341(e); 23 L.P.R.A. secs. 1004(8)–1005(b).

En el historial legislativo de las enmiendas realizadas a la Ley Núm. 130, específicamente en la Exposición de Motivos de la Ley Núm. 160, Leyes de Puerto Rico, *supra,* se reconoció la deseabilidad de que las reclamaciones de daños que surgieran de querellas sobre incumplimiento de contrato *o defectos de construcción,* se resolvieron administrativamente en D.A.Co. para así evitar la presentación del

caso nuevamente en los tribunales. Asimismo se especificó que la adjudicación de las querellas sería conforme a derecho.

Concluimos que de las leyes reseñadas surge con claridad la facultad de D.A.Co. para imponer compensación por daños y perjuicios por la omisión de los constructores en reparar los defectos de construcción según definidos en el Reglamento del Negocio de la Construcción. Esas reclamaciones tienen una relación directa y sustancial con el servicio público que D.A.Co. está obligado por ley a ofrecer a los consumidores. Al esta agencia ejercer esa facultad, adelanta los intereses de su ley habilitadora que se sintetiza en el deseo de proteger a los consumidores de prácticas indeseables por parte de los constructores y de proveer un remedio rápido, efectivo y sencillo, sin tener que recurrir a los tribunales y sufragar los costos de un litigio contra una parte que, como regla general, tiene más recursos. Nada nos parece más justo y acorde con la intención legislativa tras la creación de D.A.Co. con sus amplios poderes para proteger los derechos de los consumidores.

D. En el caso ante nos, D.A.Co. concluyó a base de la prueba desfilada que cuatro (4) de los once (11) defectos reclamados por los compradores constituían vicios de construcción, ya que excedían la medida de las imperfecciones que normalmente cabe esperarse en una construcción. Dicha agencia tenía la facultad en ley para imponerle a San Rafael y a Vifont el pago de una indemnización por los daños sufridos por los compradores ante la omisión de las primeras en repararles los defectos. Al no tener disponible la residencia objeto del contrato, los esposos Quiñones-Ortiz tuvieron que incurrir en gastos de alquiler de otra residencia. A su vez, San Rafael y Vifont dieron por resuelto el contrato de compraventa ante la negativa válida de los compradores a firmar las escrituras. De esta manera, y conforme a derecho, al amparo del Art. 1054 del Código Civil, 31 L.P.R.A. sec. 3018, San Rafael y Vifont están obligadas a resarcir a los compradores toda vez que

al firmar el contrato se obligaron no sólo a lo expresamente estipulado, sino también a todas las consecuencias que según su naturaleza fueran conformes a la buena fe, al uso y a la ley. H. Brau del Toro, *Daños y Perjuicios Extracontractuales*, 2da ed. rev., San Juan, Pubs. J.T.S., 1986, Vol. I, pág. 43.

A su vez, procedía que D.A.Co. considerara la reclamación por angustias mentales presentadas por los compradores, ya que ellas forman parte del daño moral previsible en acciones de responsabilidad civil contractual. *Camacho v. Iglesia Católica*, 72 D.P.R. 353 (1951); *Pereira v. I.B.E.C.*, 95 D.P.R. 28 (1967). D.A.Co. estimó que los esposos Quiñones-Ortiz no aportaron prueba alguna sobre las angustias mentales. Concordamos con la agencia y con el tribunal de instancia, en que las angustias mentales hay que probarlas para que sean compensables. Consideramos que D.A.Co. no actuó de forma arbitraria ni abusó de su discreción al llegar a esta conclusión, por lo que brindamos deferencia a su interpretación administrativa. *Fuertes y otros v. A.R.Pᴇ.*, 134 D.P.R. 947 (1993); *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194, 210 (1987); *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975).

Examinado cuidadosamente el expediente del caso ante nos, concluimos que D.A.Co. actuó de forma correcta al adjudicar las reclamaciones por daños y perjuicios de los compradores y al concluir que no procedía indemnización por angustias mentales.

En cuanto al monto de la compensación concedida a los compradores, resolvemos que D.A.Co. estaba justificado para que, en reconsideración, ésta aumentara de dos mil quinientos dólares ($2,500) a siete mil quinientos dólares ($7,500). Reconocemos que San Rafael y Vifont están obligadas por la resolución de D.A.Co. al cumplimiento específico del contrato de compraventa y a reparar los defectos de construcción o, en su defecto, entregar la cuantía equivalente a los gastos de reparación. Sin embargo, debemos

considerar que la indemnización corresponde a los *daños patrimoniales* de los compradores por la responsabilidad civil contractual de San Rafael y Vifont. Éstos incluyen los gastos en que incurrieron los compradores al no tener la residencia disponible para la fecha acordada. En este sentido, los esposos Quiñones-Ortiz vivieron en casas alquiladas pagando doscientos cincuenta dólares ($250) por espacio de un (1) año y cuatrocientos dólares ($400) por nueve (9) meses, hasta que D.A.Co. emitió su resolución; sus pertenencias personales se deterioraron al estar almacenadas de forma inadecuada por más tiempo del calculado, y no pudieron ir capitalizando su deuda. Ante este cuadro fáctico sostenemos que erró el tribunal de instancia al reducir la compensación a mil doscientos cincuenta dólares ($1,250). Confirmamos así la indemnización de siete mil quinientos dólares ($7,500) concedida en reconsideración por D.A.Co.

## III

Como segundo error, los compradores plantean que erró el tribunal de instancia al resolver que la Secretaria Auxiliar de Asuntos Legales no estaba autorizada a adjudicar la moción de reconsideración presentada por los compradores y que, por lo tanto, no podía aumentar la cuantía que en concepto de indemnización originalmente les otorgó D.A.Co. Les asiste la razón.

El tribunal de instancia concluye que la funcionaria emitió una determinación *en alzada*. En realidad se trataba de una moción de reconsideración. El Art. 16 de la Ley Núm. 5 establece, en lo pertinente:

> Cualquier parte adversamente afectada por la decisión del Secretario, *o del funcionario que éste designe* a tenor con el inciso (d) de la sección 341(e) de este título ... deberá ... solicitar dentro del término de diez (10) días a partir de la fecha de notificación de la decisión, *la reconsideración* del Secretario. (Énfasis suplido.) 3 L.P.R.A. sec. 341o.

Más adelante, en el inciso que regula la revisión judicial, se señala:

(a) Cualquier parte adversamente afectada por una decisión en reconsideración del Secretario *o del funcionario que éste designe* a tenor con el inciso (d) de la sección 341(e) de este título podrá solicitar la revisión judicial .... (Énfasis suplido.) 3 L.P.R.A. sec. 341p(a).

A su vez, el Art. 6(d) de la Ley Núm. 5, *supra*, establece entre los poderes del Secretario de D.A.Co.:

(d) Poner en vigor, implementar y vindicar los derechos de los consumidores ... a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas ... y conceder los remedios pertinentes ... disponiéndose que *las facultades conferidas en este inciso podrá delegarlas el Secretario en aquel funcionario que él entienda cualificado para ejercer dichas funciones.* (Énfasis suplido.) 3 L.P.R.A. sec. 341e(d).

██ La ley autoriza expresamente a que el Secretario de D.A.Co. *designe al funcionario que entienda cualificado* para ejercer ciertas funciones. En ningún momento se especifica que el funcionario que evaluará una moción de reconsideración deba ser el mismo que presidió la vista administrativa. Concluimos que la Secretaria Auxiliar de Asuntos Legales, autorizada por el Secretario, tenía la facultad para evaluar la moción de reconsideración de los compradores. De esta manera, la resolución emitida en reconsideración es enteramente válida.

IV

Finalmente, alegan los compradores que erró el tribunal de instancia al eliminar la partida que en concepto de honorarios de abogado le impuso en reconsideración D.A.Co. a las recurridas. Tienen razón.

██ La Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico establece que las agencias administrativas tienen facultad para imponer honorarios de abogado en las mismas cir-

cunstancias en que procede imponer honorarios bajo la Regla 44 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véase 3 L.P.R.A. sec. 2170(a)(c). El propósito de los honorarios de abogado es sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, los gastos, el trabajo y las inconveniencias de un pleito. *Bonilla Medina v. P.N.P.*, 140 D.P.R. 294 (1996); *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718 (1987).

 La imposición de honorarios descansa en la sana discreción de la agencia. *Raoca Plumbing v. Trans World*, 114 D.P.R. 464 (1983). Cuando una agencia administrativa ejerce su discreción al imponer honorarios de abogado, dicha determinación no será alterada por los tribunales a menos que haya mediado un abuso en ella. Fernández, *op. cit.*, pág. 112.

En el caso de autos no encontramos indicio alguno de que D.A.Co. abusara de su discreción al imponerle mil dólares ($1,000) por honorarios de abogado a San Rafael y a Vifont. Estas últimas no respondieron con debida diligencia a las reclamaciones de los compradores y procedieron sin más a decretar la resolución del contrato uniforme de compraventa. La acción administrativa pudo haber sido evitada si San Rafael y Vifont hubieran intentado conciliar los intereses de los compradores y los suyos propios en lugar de dar por resuelto el contrato. Concluimos que procede la imposición de honorarios de abogado.

Por las razones que anteceden, *modificamos la sentencia emitida por el tribunal de instancia. Resolvemos que D.A.Co. tiene la facultad en ley para otorgar compensaciones por daños y perjuicios en los casos de vicios de construcción. A su vez, concluimos que en el caso de autos procedía el aumento en la compensación decretado en reconsideración por D.A.Co., por lo que San Rafael y Vifont estaban obligadas al pago de siete mil quinientos dólares ($7,500) en concepto de daños, y se deja en vigor la decisión*

*de D.A.Co. de imponerle honorarios de abogados a San Ra-
fael y a Vifont por la suma de mil dólares ($1,000).*

El Juez Asociado Señor Fuster Berlingeri emitió una
opinión disidente.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fus-
ter Berlingeri.

En el caso de autos, la mayoría del Tribunal resuelve
que el Departamento de Asuntos del Consumidor (en ade-
lante D.A.Co.) tiene la facultad para otorgar indemniza-
ción por daños y perjuicios, *incluso por daños por angus-
tias mentales*, a consumidores afectados por la omisión de
constructoras de viviendas de reparar vicios de
construcción. Llega a tal conclusión luego de un tortuoso
análisis de supuestos precedentes jurisprudenciales y de
un enjambre de leyes supuestamente aplicables.

El asunto en cuestión no es realmente tan complicado.
No cabe duda de que se le puede encomendar a una agen-
cia administrativa el poder de otorgar compensación por
daños y perjuicios, si la Legislatura expresamente se lo ha
concedido mediante su ley habilitadora. El problema aquí
es que con respecto al asunto que nos concierne, en reali-
dad no existe tal delegación legislativa.

En prácticamente todas las instancias en que previa-
mente hemos reconocido la facultad de un organismo ad-
ministrativo para adjudicar una reclamación por daños y
perjuicios, tal facultad *había sido expresamente otorgada
por ley.* Tal fue la situación en *Rovira Palés v. P.R. Tele-
phone Co.,* 96 D.P.R. 47 (1968), y en *Viajes Gallardo v. Cla-
vell,* 131 D.P.R. 275 (1992), en los cuales reconocimos la
autoridad de la Comisión de Servicio Público para adjudi-
car daños a base de disposiciones legislativas que expresa-
mente concedían tal autoridad. Igualmente, esa fue la si-
tuación en *Aguilú Delgado v. P.R. Parking System,* 122
D.P.R. 261 (1988), en el cual resolvimos que conforme a lo

expresamente dispuesto por el Art. 8 de la Ley Núm. 120 de 7 de junio de 1973 (23 L.P.R.A. sec. 812),(¹) D.A.Co. gozaba de jurisdicción primaria para resolver "cualquier reclamación que tenga un usuario en contra del operador de un área de estacionamiento público cuando ésta surja de daños o perjuicios sufridos por su vehículo o a cualquier parte o accesorio de éste".(²) Ciertamente, en los casos previamente señalados, la Legislatura había concedido de forma expresa el poder de otorgar daños y perjuicios a las referidas agencias.

Sólo en *una ocasión*, de *manera excepcional*, hemos determinado que aunque una agencia no estaba expresamente facultada para imponer daños, dicho poder surgía inequívocamente de la amplia facultad que la Asamblea Legislativa le había otorgado de confeccionar remedios para la implantación de la política pública contenida en su ley orgánica. Resolvimos así en *U.T.I.E.R. v. J.R.T.*, 99 D.P.R. 512 (1970). Indicamos allí que:

> ... La norma o límite legislativo que la Asamblea Legislativa impuso a la Junta sobre este particular es que el remedio ordenado vaya dirigido a efectuar los propósitos de la ley. Desde luego, esa amplia discreción que la ley le concede a la Junta para crear el remedio no es ilimitada; se ha dicho que el remedio debe ser *apropiado o adecuado*. (Énfasis suplido.) Íd., pág. 526.

En *U.T.I.E.R. v. J.R.T.*, supra, la Junta de Relaciones del Trabajo había expresado que la facultad de adjudicar

---

(¹) La referida ley es conocida como Ley para Regular el Negocio de Areas para el Estacionamiento Público de Vehículos de Motor. 23 L.P.R.A. secs. 805–821.

(²) El Art. 8 de la Ley Núm. 120 de 7 de junio de 1973 más adelante establece "que la radicación de una reclamación bajo las disposiciones de esta sección no será óbice para que una parte que haya sufrido daños y perjuicios en su persona, pueda radicar la acción correspondiente ante el tribunal con competencia y jurisdicción". 23 L.P.R.A. sec. 812.

En *Aguilú Delgado v. P.R. Parking System*, 122 D.P.R. 261 (1988), señalamos que conforme a la Ley Núm. 120, *supra*, y a su exposición de motivos, cuando el usuario de un área de estacionamiento público reclama por daños y angustias mentales sufridas en su persona, tanto el Departamento de Asuntos del Consumidor (en adelante D.A.Co.) como los tribunales tienen jurisdicción concurrente para atender su reclamación. Nótese que, en este caso específico, la Asamblea Legislativa legisló al efecto.

por daños ejercida por ella era "el *único remedio adecuado para bregar con el problema de las huelgas ilegales*" (énfasis suplido), y el *único remedio* que podía efectuar la política pública de la ley y *vindicar el interés público, no los intereses privados.* En vista de que tal imposición de daños era el *único remedio eficaz*, y de que el legislador claramente le había ordenado a la Junta de Relaciones del Trabajo que confeccionase los remedios necesarios para implantar la política pública, concluimos que la Junta tenía la facultad para adjudicar daños. Ello contrasta claramente con lo sucedido en *Morales Torres v. J.R.T.*, 119 D.P.R. 286 (1987). En ese caso la Junta de Relaciones del Trabajo consideró que la imposición de daños y perjuicios en dicho caso no era necesaria ni apropiada. Estuvimos de acuerdo con que la situación en este caso no era la de *U.T.I.E.R. v. J.R.T.*, supra, y que la Junta al conceder el remedio dispuesto en la Sec. 30 de la Ley Núm. 96 de 26 de junio de 1956 (29 L.P.R.A. sec. 246b), consistente en la imposición de una compensación adicional, además de las costas, los gastos, los intereses y los honorarios de abogado del procedimiento, había satisfecho plenamente los objetivos de la Ley de Relaciones del Trabajo.

En el caso de autos, la legislación aplicable no le ha encomendado expresamente a D.A.Co. la facultad en cuestión. La mayoría así lo reconoce en su propia opinión. Por otro lado, la adjudicación de compensación por daños en la situación de autos no es, como en *U.T.I.E.R. v. J.R.T.*, supra, el único remedio que existe para evitar la práctica ilícita de las constructoras de viviendas de no reparar los defectos de construcción. Para adelantar los propósitos de su ley orgánica y vindicar el interés público, D.A.Co. tenía disponible el remedio de ordenar la reparación de los defectos de construcción de la vivienda y el cumplimiento específico del contrato de compraventa. En efecto, se usó tal remedio aquí, ya que D.A.Co. ordenó el cumplimiento específico del referido contrato y la reparación de los defectos de construcción.

Dispuso que si las querelladas no reparaban los defectos en el término concedido, pagarían adicionalmente a los querellantes la suma de $3,497, suma estimada por D.A.Co. como el costo de dicha reparación. Precisamente, en *Hernández Denton v. Quiñones Desdier*, 102 D.P.R. 218 (1974), un caso análogo al de autos, este Tribunal validó, como remedio adecuado para un incumplimiento de contrato como el que nos concierne aquí, *la acción correctiva* de ordenar la reparación de los defectos de construcción o entregarle al querellante la cantidad que a juicio de la agencia costaría realizar las reparaciones.

En resumen, pues, no tenemos ante nos una situación en la cual el poder de adjudicar daños haya sido expresamente otorgado por el legislador a la agencia administrativa, o que tal adjudicación sea el único remedio eficaz que tiene la agencia para llevar a cabo su encomienda. Tampoco tenemos ante nos un asunto cuya adjudicación debe dejarse a dicha agencia, por ser el organismo más capacitado para ello. Otorgar una indemnización por los daños y perjuicios personales sufridos por los compradores de viviendas, es un remedio para reparar un perjuicio privado, desde un punto de vista civil. La adjudicación de dichos daños no requiere el conocimiento especializado de D.A.Co. Para ello, los tribunales de justicia están obviamente mejor facultados. Ciertamente la experiencia y el conocimiento institucionales de D.A.Co. son de gran ayuda para la adjudicación de querellas en que se reclamen daños a la vivienda o propiedad, tales como el costo determinado de reparar los defectos de construcción, ya que D.A.Co. cuenta con técnicos o peritos en el área de la construcción que facilitan el trabajo de la agencia.[3] Sin embargo, para adjudicar los daños y perjuicios sufridos por los compradores de la vivienda en cuanto a su persona o a su patrimonio

---

[3] En el caso de autos, un técnico de D.A.Co. realizó una inspección en la residencia y rindió un informe, detallando todos los defectos de construcción que presentaba la vivienda y calculó el costo aproximado de la corrección de los defectos.

personal,(⁴) están mejor facultados los tribunales de justicia, los cuales día a día tienen que entender en este tipo de remedios y controversias, y tienen gran experiencia y conocimiento sobre tales asuntos.

Es menester recordar, además, que los procedimientos de adjudicación en agencias como D.A.Co. no tienen que estar necesariamente presididos por abogados, por lo que cabe la posibilidad de que quienes determinen asuntos tales como la indemnización por daños por angustias mentales sean legos en la materia.(⁵) Por otro lado, debe tenerse en cuenta también que en estos tiempos voces autorizadas han formulado serias críticas con respecto al desempeño de agencias administrativas como D.A.Co. Recientemente, el Ombudsman de Puerto Rico advirtió que, por diversas razones, incluyendo la falta de dinero para contratar abogados, D.A.Co. no estaba sirviendo adecuadamente a los consumidores que debe proteger. Destacó la lentitud o inatención de D.A.Co. en la tramitación de querellas, la ausencia de vistas administrativas para resolverlas y la

---

(⁴) En este caso, los compradores de la vivienda solicitaron ante D.A.Co. indemnización por los inconvenientes sufridos al no entregárseles la residencia para su uso y disfrute en la fecha pactada. Entre éstos, podemos mencionar los sufrimientos y las angustias mentales experimentadas por los recurrentes al tener que vivir incómodamente bajo alquiler, y los daños patrimoniales al tener que pagar rentas en concepto de alquiler de las casas donde han tenido que vivir con su familia por falta de una residencia propia, viéndose imposibilitados de capitalizar estos cánones de arrendamiento pagados.

(⁵) La Sec. 3.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2153), establece, en lo pertinente, que:

"Toda agencia podrá designar oficiales examinadores para presidir los procedimientos de adjudicación que se celebren en ella, los cuales *no tendrán que ser necesariamente abogados,* particularmente cuando el procedimiento en cuestión es uno informal.

"El jefe de la agencia podrá delegar la autoridad de adjudicar a uno o más *funcionarios o empleados* de su agencia. A estos funcionarios o empleados se les designará con el título de jueces administrativos." (Énfasis suplido.)

Nótese, entonces, que al otorgar la facultad para conceder daños y perjuicios a una agencia administrativa, los querellantes se corren el riesgo de que empleados o funcionarios de ésta, que sean legos en la materia, presidan las vistas administrativas o adjudiquen las controversias.

ausencia de esfuerzos por ejecutar sus dictámenes a favor de los consumidores.(6)

Por todas las razones mencionadas antes, debemos ser muy cautelosos en suplantar a los foros judiciales y sustituirlos por agencias administrativas, cuando se trata de funciones que históricamente han realizado los tribunales, y las han realizado bien. Ciertamente no puede hacerse tal sustitución a base de disposiciones tan imprecisas como la de la ley habilitadora de D.A.Co. que autoriza a dicha agencia a "tomar la acción correctiva que proceda en derecho". Para que D.A.Co. pueda ejercer el poder de otorgar daños y perjuicios sufridos por los compradores de viviendas en cuanto a su persona, tal poder debe ser expresamente delegado por nuestra Asamblea Legislativa mediante ley específica al efecto, cosa que no ha ocurrido aquí. Como la mayoría resuelve de otro modo al que creo procedente, disiento.

---

(6) Declaraciones públicas del Ombudsman de 27 de junio de 1997.