EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Diosdada Polanco López<br>Querellante<br><br>v.<br><br>Cacique Motors,<br>Firstbank Puerto Rico<br>Recurrida<br><br>Departamento de Asuntos<br>del Consumidor<br>Peticionario | Certiorari<br><br>2005 TSPR 96<br><br>164 DPR _____ |

Número del Caso: CC-2002-894

Fecha: 30 de junio de 2005

Tribunal de Apelaciones:

Circuito Regional de San Juan-Panel IV

Juez Ponente:

Hon. Charles Cordero Peña

Abogado de la Parte Peticionaria:

Lcdo. José A. Maisonet Trinidad

Abogado de la Parte Recurrida:

Lcdo. Antonio Rodas Viñas

Materia: Vicios Ocultos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Diosdada Polanco López
        Querellante

            v.                            CC-2002-894

Cacique Motors,
Firstbank Puerto Rico
        Recurrida

Departamento de Asuntos
Del Consumidor
        Peticionario


PER CURIAM

San Juan, Puerto Rico, a 30 de junio de 2005

El Departamento de Asuntos del Consumidor (D.A.Co.) nos solicita que revisemos una sentencia del Tribunal de Apelaciones mediante la cual se dejó sin efecto una decisión de la agencia que ordenó la resolución de un contrato de compraventa de un vehículo de motor usado. Debemos determinar si, tal y como resolvió el tribunal *a quo*, para que proceda la resolución del contrato corresponde a la parte compradora demostrar que el vehículo adolecía de los defectos al momento de la compraventa; o si basta con el estándar de prueba establecido por este tribunal para los vehículos nuevos, que sólo exige que el comprador demuestre que al momento de la compraventa

el vehículo funcionaba normalmente. Resolvemos que el estándar jurídico para resolver un contrato de compraventa de vehículos de motor nuevos es igualmente aplicable a los vehículos usados, por cuanto procede revocar la sentencia emitida por el Tribunal de Apelaciones y confirmar la resolución del D.A.Co.

## I.

La señora Diosdada Polanco López compró un vehículo de motor usado a Cacique Motors (en adelante 'Cacique') el 22 de agosto de 2001. El precio de venta del vehículo fue de $7,500 del cual se pagó un pronto de $2,500 y se financió el monto restante a través de Firstbank de Puerto Rico. Al momento de la compraventa el vehículo había recorrido 65,851 millas, por lo que el vendedor le otorgó a la compradora un (1) mes de garantía o mil (1,000) millas, lo primero que ocurriera; conforme requiere el Reglamento de Vehículos de Motor del Departamento de Asuntos del Consumidor (en adelante 'el Reglamento').[1] Artículo 24, Reglamento Núm. 4797 de Garantías de Vehículos de Motor.

Alegadamente, para el mes de septiembre de 2001 la señora Polanco notó fallas en la transmisión del vehículo, y procedió a comunicarlas al vendedor para que las mismas fueran reparadas. El concesionario, por su parte, negó

---

[1] El Reglamento Núm. 4797 de Garantías de Vehículos de Motor provee en su Artículo 24 sobre el término y naturaleza de la garantía en los vehículos de motor usados, de acuerdo al millaje recorrido al momento de la compraventa.

responsabilidad.[2] En el mes de diciembre de 2001, a pesar de haberse corroborado el defecto mediante una prueba de carretera, Cacique le notificó a la compradora que no asumiría los costos de reparación por haberse vencido ya el término de garantía. El vendedor se ofreció a reparar el vehículo sólo si la compradora asumía los costos. El vehículo fue llevado al Garaje Rubén donde permaneció por varios meses con la transmisión desmontada dado que la señora Polanco no podía pagar la reparación. Finalmente la compradora pagó $300 por la labor de desmontar la transmisión y se llevó el vehículo a su casa sin reparar, utilizando una grúa.

Así las cosas, en enero del 2002 la señora Polanco presentó querella ante el D.A.Co. en la cual solicitó la resolución del contrato. El D.A.Co. inspeccionó el vehículo y llevó a cabo vista administrativa. En mayo del 2002 el D.A.Co. emitió una orden en la que decretó la resolución del contrato de compraventa. En síntesis determinó que la querellante no habría adquirido el vehículo de conocer que éste adolecía de defectos mecánicos; que el defecto hacía el vehículo impropio para su uso; y que, según las disposiciones del Código Civil sobre saneamiento por vicios ocultos en la compraventa,

---

[2] Del expediente no surge la fecha específica en la que se notó el fallo mecánico ni la fecha en la que se le reclamó a Cacique por los defectos del vehículo. Según señala Cacique la señora Polanco primero les notificó los defectos en noviembre del 2001, ya vencida la garantía pactada. Este hecho no fue refutado por la querellante.

Artículos 1373 al 1388, 31 L.P.R.A. secs. 3841 a la 3856, procedía la resolución del contrato de compraventa. Ordenó al concesionario a recoger el vehículo, reembolsar el pronto y las mensualidades pagadas; y relevar a la querellante del contrato de financiamiento con Firstbank.

Inconforme con la determinación administrativa, Cacique solicitó oportuna revisión ante el Tribunal de Apelaciones. Adujo que había errado el D.A.Co. al ignorar su propio Reglamento de Garantías de Vehículos de Motor y al no reconocer el acuerdo de garantía pactada entre las partes. El foro intermedio revocó al D.A.Co. por entender que la determinación administrativa fue arbitraria y caprichosa, toda vez que el defecto en la transmisión surgió luego del mes de la compraventa; que la agencia no hizo determinaciones sobre las millas corridas al momento de identificarse el desperfecto; y que ante los hechos que obran en el expediente era improcedente determinar que los defectos del vehículo fueron preexistentes a la compraventa. El Tribunal de Apelaciones indicó en su sentencia también que en los casos de vehículos de motor con vicios ocultos, le corresponde **"al comprador demostrar que el vehículo que compró tenía el vicio oculto** desde antes de la compraventa y que la parte querellada tuvo oportunidad de corregir el defecto pero no lo corrigió o no pudo corregirlo."

De la determinación del foro apelativo el D.A.Co. acudió ante nosotros. Nos señaló que, contrario a la

apreciación del Tribunal de Apelaciones, no corresponde al comprador el peso de probar que el vehículo tenía el vicio antes de la compraventa, sino que basta con que el comprador pruebe que el vehículo comprado funcionaba normalmente. Expedimos el recurso de certiorari y con el beneficio de la comparecencia de ambas partes pasamos a resolver.

## II.

Mediante la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. sec. 341, se creó el D.A.Co. con el propósito principal de vindicar, proteger e implementar los derechos de los consumidores. Artículo 3, 3 L.P.R.A. sec. 341b. Posteriormente, en virtud de la Ley de Garantías de Vehículos de Motor, Ley Núm. 7 de 24 de septiembre de 1979, 10 L.P.R.A. sec. 2051 *et. seq.*, se promulgó el Reglamento Núm. 4797 de Garantías de Vehículos de Motor ('el Reglamento'), como mecanismo para proteger adecuadamente a los consumidores de Puerto Rico en la adquisición de vehículos de motor; asegurarles que estos vehículos sirvan los propósitos para los cuales fueron adquiridos; y que reúnan las condiciones necesarias para garantizar al comprador la protección de vida y propiedad. Artículo 2, Reglamento Núm. 4797 de Garantías de Vehículos de Motor. El Reglamento también procuró prevenir las prácticas ilícitas en las ventas de vehículos de motor. *Íbid.*

Este Reglamento es aplicable a toda persona --natural o jurídica-- que se dedique a la **venta de vehículos de motor nuevos o usados** en Puerto Rico. Artículo 3, Reglamento Núm. 4797 de Garantías de Vehículos de Motor. El mismo se debe interpretar liberalmente a favor del consumidor. Artículo 4, Reglamento Núm. 4797 de Garantías de Vehículos de Motor. Es evidente que el Reglamento abarca tanto los vehículos de motor nuevos como los usados. En efecto, una lectura del mismo claramente lo refleja. Este tiene disposiciones específicas dirigidas a cada uno de ellos.

En lo que nos ocupa, los vehículos de motor usados, el Artículo 24.1 del Reglamento dispone que "[t]odo vendedor de vehículos de motor usados, concederá garantía, en piezas y mano de obra. Si el comprador desea dicha garantía, la misma será por escrito y conforme a lo establecido en este Reglamento. Esta garantía será a base del millaje recorrido y según la siguiente escala: . . . c) Más de 50,000 millas hasta 100,000 millas --un (1) mes o mil (1,000) millas, lo que ocurra primero". En su próximo inciso el referido artículo provee como excepción, que la disposición anterior no será aplicable cuando el vendedor y el comprador hayan llegado a un acuerdo mediante el cual el consumidor renuncie de forma consciente, informada y por escrito de su derecho a la correspondiente garantía. Artículo 24.2 Reglamento Núm. 4797 de Garantías de Vehículos de Motor.

En lo que respecta a los defectos del vehículo, si el

comprador así lo desea, el D.A.Co. tiene la potestad de decretar la resolución del contrato o, reducir proporcionalmente su precio de venta --de acuerdo a las disposiciones del Código Civil-- en aquellos casos en que el vendedor tuvo oportunidad razonable para reparar los defectos más no quiso o no pudo repararlos. D.A.Co. determinará caso a caso lo que constituye 'oportunidad razonable'. Artículo 27.3, Reglamento Núm. 4797 de Garantías de Vehículos de Motor.

Por otro lado, en su Artículo 35, el Reglamento preceptúa que nada de lo dispuesto en el mismo limita el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción o vicios ocultos, y la acción redhibitoria que reconoce el Código Civil para los contratos de compraventa de bienes muebles. En consecuencia, las determinaciones del D.A.Co. relacionadas a estos asuntos deben ser cónsonas con los artículos del Código Civil sobre las acciones de saneamiento en la compraventa. *Domínguez Talavera v. Caguas Expressway Motors,* 148 D.P.R. 387 (1999).

Nuestro Código Civil dispone que todo vendedor está obligado a la entrega y saneamiento de la cosa vendida. Artículo 1350, 31 L.P.R.A. sec. 3801. Este deber de saneamiento, que complementa el deber de la entrega, garantiza al comprador que el vendedor responderá de la posesión legal y pacífica de la cosa comprada y de los

vicios o defectos ocultos que tuviere. Artículo 1363, 31 L.P.R.A. sec. 3831. El comprador adquiere la cosa para utilizarla según mejor lo estime. Esta finalidad se vería malograda si entregado el objeto, su adquirente se viera privado de la cosa o simplemente no pudiera aplicarla a los usos a los que había intencionado. I. Sierra Gil de la Cuesta, *Comentario del Código Civil,* Tomo 7, Editorial Bosch, España, 2000, a la pág. 391.

En el derecho de contratos se conoce este deber de garantía como saneamiento por evicción --perturbación jurídica del derecho adquirido--, o saneamiento por vicios ocultos --perturbación económica de la posesión de la cosa. *Domínguez Talavera v. Caguas Expressway Motors, supra*; *Ferrer Delgado v. General Motors. Corp.,* 100 D.P.R. 246 (1971). El saneamiento por vicios ocultos contempla situaciones en las que posterior a la entrega se evidencian en la cosa defectos intrínsecos que exceden las imperfecciones menores que cabe esperar normalmente en un producto determinado. *D.A.Co. v. Marcelino Mercury*, 105 D.P.R. 80 (1976).

De acuerdo a la doctrina, para que proceda una acción de saneamiento por vicios ocultos han de coincidir los siguientes requisitos: que la cosa adolezca de un vicio oculto, que no sea conocido por el adquirente al momento de la compraventa; que el vicio sea de tal gravedad que haga la cosa impropia para el uso a la que se destina o disminuya notablemente su valor de manera que el comprador

no habría adquirido la cosa de haberlo conocido; el defecto debe ser preexistente a la venta; y la acción debe ejercitarse dentro del plazo legal de seis (6) meses contados desde la entrega de la cosa vendida. Artículos 1373 y 1379 del Código Civil, 31 L.P.R.A. secs. 3841 y 3847. Véanse también *Domínguez Talavera v. Caguas Expressway Motors,* supra; D.A.Co. *v. Marcelino Mercury*, supra; *Pérez Vélez v. VPH Motors Corp.,* res. el 3 de noviembre de 2000, 152 D.P.R.___, 2000 T.S.P.R. 165. Hemos resuelto que dicho plazo comienza a transcurrir no desde la fecha de perfección del contrato, sino desde el momento en que cesan las gestiones de inteligencia entre las partes. *Ferrer Delgado v. General Motors. Corp., supra*; *Casa Jaime Corp. v. Castro*, 89 D.P.R. 702 (1963).

En casos de saneamiento por vicios ocultos el Código dispone que el comprador puede optar entre desistir del contrato, abonándose los gastos pagados; o reducir el precio en una cantidad proporcional, a juicio de peritos. Artículo 1375, 31 L.P.R.A. sec. 3843. La primera opción, denominada acción redhibitoria, representa la restitución *in integrum* ya que coloca a las partes en la misma condición en la que se hallaban antes de la compraventa. La segunda, conocida como acción *quanti minoris,* conlleva la restitución del precio percibido en proporción a la pérdida de valor en la cosa, a consecuencia del defecto. Q.M. Scaevola, *Código Civil,* Tomo XXIII, Reus S.A., Madrid, 1970, págs. 196-197. Por último, dispone el Código que en

caso que el vendedor conociera del defecto oculto y no lo comunicara al comprador, el último tendrá derecho también a reclamar en concepto de daños y perjuicios. Artículo 1375, *supra*.

En cuanto a la magnitud del defecto que da lugar a una acción redhibitoria, hemos interpretado que no se requiere que éste imposibilite el uso de la cosa, sino que basta con que merme notablemente su valor. *D.A.Co. v. Marcelino Mercury, supra*. Además, como antes mencionamos, el defecto ha de ser oculto al momento de la compraventa. Esta es una cualidad relativa, ya que no se trata de que el defecto quede oculto en sentido literal, sino que lo sea para el comprador atendiendo sus características individuales. Esto significa que no será responsable el vendedor por los vicios ocultos cuando el comprador sea un perito que debiera **fácilmente** conocer los defectos por razón de su ocupación u oficio. J.M. Manresa y Navarro, *Comentarios al Código Civil Español,* Tomo 10, Vol. 1, Reus S.A., Madrid, 1969, pág. 338.

La determinación sobre la magnitud del defecto es una cuestión de hecho, por cuanto el foro de instancia está en mejor posición para hacer esta apreciación que los foros apelativos. Sólo se justifica la intervención con la determinación del juzgador ante ausencia de prueba o error manifiesto en su apreciación. *Domínguez Talavera v. Caguas Expressway Motors, supra; García Viera v. Ciudad Chevrolet, Inc.,* 110 D.P.R. 158 (1980); *D.A.Co. v. Marcelino Mercury,*

*supra.*

En ocasiones anteriores habíamos tenido la oportunidad de evaluar acciones por vicios ocultos cuando el objeto de la compraventa es un vehículo de motor. Véanse entre otros *Berríos v. Courtesy Motors of Puerto Rico,* 91 D.P.R. 441 (1964); *Ferrer Delgado v. General Motors Corp., supra*; *García Viera v. Ciudad Chevrolet, Inc., supra*; *Domínguez Talavera v. Caguas Expressway Motors, supra.* En estos casos hemos resuelto, el paso inicial consiste en determinar si los defectos de que adolece el automóvil constituyen un vicio oculto, sea redhibitorio o cuantiminoso. *García Viera v. Ciudad Chevrolet, Inc., supra.* En *Ferrer Delgado v. General Motors Corp., supra*, reconocimos que por lo general, el comprador de un vehículo de motor no es un perito en mecánica automotriz. Siendo así, requerirle al comprador, lego en materia de mecánica, que pruebe exactamente qué piezas son las defectuosas sería imponerle una carga de prueba injusta. Allí resolvimos que ante esta situación, el comprador no perito sólo viene obligado a demostrar que al momento de la compraventa el automóvil funcionaba normalmente, y que el vendedor no quiso o no pudo corregir el defecto, a pesar de haber tenido la oportunidad de hacerlo.

El concesionario recurrido nos invita a distinguir la jurisprudencia existente del caso que nos ocupa basado en el hecho que en cada uno de los casos citados el objeto de la compraventa fue un vehículo de motor nuevo y no usado.

No encontramos fundamento legal alguno que sostenga esa contención; como tampoco aduce alguno el concesionario. Ni el Código Civil ni el Reglamento de Garantías de Vehículos de Motor apoyan esa distinción. Analizada la doctrina, resalta con meridiana claridad que **no es la naturaleza del bien, sino la naturaleza del defecto lo que debe ser considerado en una acción redhibitoria**. Incluso, surge claramente del Reglamento que el mismo aplica tanto a los vehículos nuevos como a los usados. Exigir un estándar de prueba más oneroso al comprador de un vehículo usado, que el que se le exige al comprador de un vehículo nuevo, en nada aporta al propósito del Reglamento de proteger adecuadamente a los consumidores y prevenir las prácticas ilícitas en la compraventa de vehículos de motor. En consecuencia, reiteramos que el comprador de un vehículo de motor --sea éste nuevo o usado-- al reclamar por vicios ocultos sólo vendrá obligado a demostrar que el automóvil funcionaba normalmente al momento de la compra, y que el vendedor no quiso o no pudo corregir el defecto, a pesar de haber tenido la oportunidad de hacerlo.

**III.**

A la luz del anterior trasfondo jurídico procede analizar si en el presente caso se cumplen los requisitos para que proceda una acción redhibitoria. Según las determinaciones de hechos del D.A.Co., fue alrededor de un mes posterior a la compraventa que la señora Polanco notó los defectos mecánicos en la transmisión. No hay nada en

el récord que indique que la compradora fuera una experta mecánica que hubiese detectado el defecto con facilidad. Tampoco surge del expediente que Cacique conociera del defecto y hubiera actuado de mala fe. Por otro lado, la compradora probó a satisfacción del D.A.Co. que el automóvil funcionaba normalmente al momento de la compraventa. Por ende, razonablemente podemos concluir que el defecto mecánico constituyó un vicio oculto desconocido tanto para el vendedor como para la compradora.

El defecto fue de naturaleza tal que imposibilitó el uso del vehículo para el cual la compradora lo había intencionado, al punto que el automóvil tuvo que ser transportado en grúa a la residencia de la peticionaria. Según determinó el D.A.Co., al momento de presentarse la querella, el vehículo llevaba más de cinco (5) meses sin que se pudiera utilizar. La agencia determinó también, que la señora Polanco no habría comprado el automóvil de haber conocido que adolecía del defecto. De otro lado, no cabe duda que la compradora instó su querella dentro del plazo dispuesto por ley. Por último, el vendedor tuvo oportunidad razonable de corregir el defecto, más en todo momento se negó a hacerlo, alegando que la garantía había vencido.

Ante la evidencia que obra en el expediente, entendemos que el D.A.Co. actuó dentro de sus prerrogativas administrativas. Reiteradamente hemos resuelto que las decisiones de los organismos administrativos merecen la

mayor deferencia judicial. Utilizando un criterio de razonabilidad, los tribunales apelativos no deben interferir con estas determinaciones cuando las mismas están sostenidas por evidencia sustancial que obre en el expediente. *Otero Mercado v. Toyota de P.R.,* res. el 3 de febrero de 2005, 163 D.P.R. ___, 2005 T.S.P.R. 8; *Metropolitana S.E. v. A.R.P.E.,* 138 D.P.R. 200 (1995). Las determinaciones de hechos de las agencias administrativas tienen a su favor una presunción de corrección que no debe ser descartada a menos que no se presente evidencia suficiente para derrotarlas. *Otero Mercado v. Toyota de P.R., supra.* Por tratarse de un caso de vicios ocultos, independientemente de la garantía de servicio pactada entre las partes, D.A.Co. podía, conforme al Artículo 27 del Reglamento, ordenar la resolución del contrato de compraventa. Además, nada hay en el récord que nos permita concluir que la señora Polanco tuviera la intención de renunciar a la acción redhibitoria que le asiste bajo el Código Civil y que el Reglamento le reconoce. Erró el foro apelativo intermedio en intervenir con la determinación administrativa y al no prestarle la debida deferencia a las determinaciones del D.A.Co.

Por los fundamentos antes expuestos, procede la revocación de la sentencia del Tribunal de Apelaciones y la reinstalación de la resolución del D.A.Co.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Diosdada Polanco López
    Querellante

       v.                    CC-2002-894

Cacique Motors,
Firstbank Puerto Rico
    Recurrida

Departamento de Asuntos
Del Consumidor
    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 2005

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, los cuales se incorporan integramente a la presente, se revoca la sentencia dictada por el Tribunal de Apelaciones y se reinstala la resolución emitida por el D.A.Co.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo