| | |
|---|---|
| Ramón Almonte Font y Mayleen Gratacos<br><br>Peticionarios<br><br>v.<br><br>Servicios y Obras del Caribe, Inc.; R.B. Construction Corp.; Riax Construction; CNA Casualty Co.; Ing. José Puig<br><br>Recurridos | Certiorari<br><br>2005 TSPR 132<br><br>165 DPR _____ |

Número del Caso: CC-2000-785

Fecha: 15 de septiembre de 2005

Tribunal de Circuito de Apelaciones:

      Circuito Regional I de San Juan Panel IV

Juez Ponente:

      Hon. Ivonne Feliciano Acevedo

Abogado de la Parte Recurrida:

      Lcdo. Enrique Nassar Rizek
      Lcdo. Rafael Mayoral Morales

Abogado de la Parte Peticionaria:

      Lcdo. Antonio Borrés Otero

Materia: Defectos de Construcción

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Almonte Font y Mayleen Gratacos

        Peticionarios

           v.

Servicios y Obras del Caribe, Inc.; R.R. Construction Corp.; Riax Construction; CNA Casualty Co.; Ing. José Puig

        Recurridos

Certiorari

CC-2000-785

SENTENCIA

En San Juan, Puerto Rico, a 15 de septiembre de 2005.

Por estar igualmente dividido el Tribunal, se confirma la decisión del Tribunal de Apelaciones.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton y el Juez Asociado señor Rebollo López disienten sin opinión escrita. El Juez Asociado señor Fuster Berlingeri y la Jueza Asociada señora Rodríguez Rodríguez no intervinieron.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Almonte Font y Mayleen Gratacos

       Peticionarios

       v.

Servicios y Obras del Caribe, Inc.; R.R. Construction Corp.; Riax Construction; CNA Casualty Co.; Ing. José Puig

       Recurridos

CC-2000-785      Certiorari

Voto concurrente de la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 15 de septiembre de 2005.

El señor Ramón Almonte Font y la Sra. Mayleen Gratacos recurren de la decisión del Tribunal de Apelaciones denegando el recurso de revisión de ese caso y nos solicitan que revoquemos una resolución emitida por el Departamento de Asuntos del Consumidor (DACO) que desestimó su querella por vicios de construcción. Por las razones que exponemos a continuación, concurrimos con la sentencia dictada por este Tribunal como resultado del empate en los votos de los jueces participantes.

I.

El peticionario, Ramón Almonte Font, compró el 17 de marzo de 1988 un apartamento en el

condominio Tenerife, ubicado en el sector El Condado. Este apartamento fue adquirido de ladesarrolladora del proyecto, Servicios y Obras del Caribe, Inc. (en adelante SYOCA). El señor Almonte Font pactó con SYOCA ciertos cambios en el diseño interior original de dicho apartamento, tras lo cual SYOCA entregaría el apartamento sin terminaciones interiores. El señor Almonte Font recibió un crédito de $10,170 por razón de los cambios en la estructura.

Para diseñar los planos y supervisar los cambios, el peticionario contrató a la firma de arquitectos Sierra, Cardona y Ferrer. A su vez, SYOCA subcontrató a la compañía de construcción RB, constructora del proyecto Tenerife, para realizar las obras aquí pactadas. De esa forma, las obras conllevaban una coordinación entre los arquitectos contratados por el señor Almonte Font, SYOCA y RB.

RB ejecutó algunas de las obras rediseñadas por la firma de arquitectos contratada, incluyendo parte de la instalación de un nuevo sistema de aire acondicionado, seleccionado por el señor Almonte Font. Los planos para éste nuevo sistema de aire acondicionado fueron diseñados para Sierra, Cardona y Ferrer por el ingeniero Luis Puig, co-recurrido en este recurso, quien también había diseñado los sistemas de aire acondicionado del resto del condominio. Este diseño preparado por el ingeniero Puig fue modificado durante la construcción del interior del apartamento. Entre las modificaciones, se cambiaron unas parrillas por razones estéticas y se instalaron unas lámparas en sustitución de la parrilla de retorno.

RB también tuvo a su cargo los trabajos de plomería, electricidad y demolición necesarios para permitir los

cambios en los interiores del apartamento diseñados por Sierra, Cardona y Ferrer. Para completar los trabajos comenzados por RB y hacer los trabajos de terminaciones interiores del apartamento, el peticionario contrató a RIAX Contractors Corp. (RIAX). Todas las obras realizadas por RIAX fueron supervisadas por el arquitecto Iván Banuchi, quien fue contratado por el peticionario para sustituir a Sierra, Cardona y Ferrer. Las obras realizadas por RIAX fueron pagadas según fueron aprobadas por dicho arquitecto.

Una vez en posesión del apartamento, el señor Almonte comenzó a notar problemas de filtración de agua a través del ventanal del área de la sala y la pared del estudio. Según los planos originales del apartamento, este ventanal consistiría de puertas corredizas de cristal de 5'x 9'. Sin embargo, para el apartamento del peticionario se modificó el diseño y se instalaron, en vez, dos puertas de cristal centrales, rodeadas por piezas fijas de cristal en la parte inferior y en las partes laterales. El señor Almonte también percibió humedad en pisos y paredes, producto de la condensación del sistema de aire acondicionado, lo cual afectó la pintura del apartamento.

El peticionario se querelló en DACO contra la desarrolladora y vendedora, SYOCA y contra la constructora, RB, por las filtraciones y el mal funcionamiento del aire acondicionado, alegando que éstos constituían vicios de construcción al amparo de la Ley Núm. 130 del 13 de junio de 1967, según enmendada, 17 LPRA secs. 501 et seq., conocida como la Ley del Oficial de

Construcción. Luego, enmendó la querella para incluir al ingeniero Luís Puig y a la constructora dedicada a trabajos interiores, RIAX y su dueño señor Peter Rivera.

DACO celebró vistas y finalmente, el 4 de marzo de 1998, diez años después de presentada la querella, la desestimó porque: (a) "...de la prueba presentada no se establecen causas o reclamos..." (b) de la prueba presentada se demostró que el querellante hizo cambios sustanciales y que dichas obras contaron con la supervisión de un profesional contratado para esos efectos, (c) "...no reclama vicios de construcción bajo la norma de la Ley Núm. 130 del 13 de junio de 1967, según enmendada. En este caso el querellante no adquirió un apartamento típico, sino una estructura en la cual se introdujeron cambios sustanciales, distintos a los diseños originalmente programados para la estructura...".

El peticionario solicitó la revisión de esta determinación ante el Tribunal de Apelaciones el 31 de marzo de 1998. Ese tribunal denegó el recurso el 12 de julio de 2000, con el voto disidente de uno de los jueces del panel. El 22 de septiembre de 2000 se presentó el recurso de Certiorari que nos ocupa y expedimos el auto el 13 de noviembre de 2000.[1]

II.

---

[1] Se alegó que el Tribunal de Apelaciones había errado: "...al resolver que la Ley 130 del 13 de junio de 1967, según enmendada, 17 L.P.R.A. sec. 501 et seq., no aplica a R. B. y RIAX; ...al resolver que los señores Meter [sic] Rivera y el ingeniero Puig, no están incluidos dentro de los términos urbanizador o constructor según definido por la Ley Núm. 130, *supra* ...al resolver que aún si la Ley Núm. 130, *supra*, aplica a SYOCA esta [sic] no es responsable por la instalación del sistema de acondicionador de aire; ...al resolver que DACO no erró al desestimar por no justificar la prueba presentada la concesión de un remedio; ...al resolver que no era necesario discutir los errores señalados en el recurso de

revisión sobre el que DACO no permitiese prueba de daños y por desestimar la querella."

La agencia cuya decisión se cuestiona en este recurso, DACO, tiene la encomienda de administrar e implantar la Ley Núm. 130, *supra*. Esta legislación creó la Oficina del Oficial de Construcción, para "facilitar a los compradores [de viviendas] vindicar los derechos que las leyes vigentes le concedían". <u>United Federal Savings v. DACO</u>, 111, D.P.R. 424, 425 (1981). <u>Quiñones Irizarry v. San Rafael Estates, S.E.</u>, 143 D.P.R. 756, 767 (1997).[2] DACO aprobó el Reglamento para "Regular las Distintas Actividades que se Lleven a Cabo en el Negocio de la Construcción en Puerto Rico" (Reglamento del Negocio de la Construcción) puesto en vigor el 16 de septiembre de 1977 (Reglamento Núm. 2268), al amparo de la autoridad así conferida. Este Reglamento faculta al Secretario de DACO a "investigar y adjudicar las querellas radicadas sobre prácticas indeseables en el negocio de la construcción; concediendo los remedios pertinentes conforme a derecho". Reglamento del Negocio de la Construcción, *supra*, sección 2(8); <u>Quiñones Irizarry v. San Rafael Estates, S.E.</u>, *supra*.

La Ley Núm. 130, en su segundo artículo, define el concepto urbanizador o constructor como "toda persona que se dedique al negocio de la construcción en calidad de

empresario o principal responsable de la promoción, diseño, venta, construcción de obras de urbanización para vivienda, o de construcción en grande escala de viviendas, bien del tipo individual o multipisos". 17 LPRA, Sec. 502(d).

---

[2] Las funciones del Oficial de Construcción fueron asignadas originalmente a la Administración de Servicios del Consumidor, organismo creado mediante la Ley Núm. 148 de 27 de junio de 1968, 23 L.P.R.A. sec. 1001 et seq. En 1973 se creó el Departamento de Asuntos del Consumidor (DACO) mediante la Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. sec. 341 et seq. y se transfirieron a este departamento todas las funciones, poderes y deberes de la Administración.

Entre las "prácticas indeseables en el negocio de la construcción", la Ley 130 incluye: "(e) dejar de corregir un defecto de construcción en una vivienda según éste sea definido por el reglamento puesto en vigor por el Oficial de Construcción." Ley Núm. 130, artículo 9(e), 17 LPRA, Sec.509 (e). A su vez, el Reglamento del Negocio de la Construcción define el término "defectos de construcción" como:

> ...cualquier anormalidad, defecto, falta de accesorios, falla, deterioro prematuro, mal funcionamiento, inexactitud en las medidas o cualesquiera otra condición más allá de las tolerancias normales permisibles que pueda sufrir la estructura de vivienda o el área en que ésta esté enclavada o cualquier otro vicio o condición que exceda la medida de las imperfecciones que cabe esperar en una construcción sin que se pueda imputar a una fuerza mayor y/o fenómeno natural, **y no se deban al maltrato, alteraciones**, falta de mantenimiento, ni desgaste normal, siempre y cuando se notifique al urbanizador y/o constructor dentro del período de tiempo que [establece este Reglamento]. Sección 1(e). [Énfasis Nuestro].

La prueba presentada ante DACO demostró que RIAX no es un constructor o urbanizador, según definidos estos términos en la Ley Núm. 130, *supra*. RIAX realizó trabajos de terminaciones interiores para el apartamento del señor Almonte Font y no actuó como "principal responsable" de la construcción, diseño, promoción o venta de "obras de urbanización para viviendas". El señor Rivera, dueño de RIAX y el ingeniero Puig tampoco están incluidos en la

definición de constructor o urbanizador bajo esta ley. El primero, por las mismas razones aplicables a RIAX, mientras que el ingeniero Puig fue contratado por los arquitectos del peticionario para diseñar el nuevo sistema de aire acondicionado, función que no se encuentra dentro de la definición de urbanizador o constructor. A esto debemos

añadirle que, según la prueba, los planos preparados por el ingeniero Puig para el nuevo sistema de aire acondicionado fueron alterados a través de todo el proceso de instalación, sin consultársele.

No hay duda de que SYOCA es un constructor o urbanizador según las disposiciones de la Ley Núm. 130, *supra.* Además, SYOCA es el desarrollador del proyecto donde el peticionario adquirió el apartamento y fue quien vendió el apartamento al señor Almonte Font.

Ahora bien, SYOCA pactó con el señor Almonte Font la entrega del apartamento sin terminaciones interiores, para que éste pudiera hacerlas a su gusto. Para entregar el apartamento según pactado, SYOCA subcontrató a RB, una compañía que igualmente se dedica al negocio de la construcción. La labor de RB se limitó a comenzar el proceso de instalación de las maquinas de aire acondicionado y parte de los ductos (la coquerellada RIAX instaló las parrillas y otro tramo del ducto) y a realizar trabajos de plomería, electricidad y demolición para permitir los cambios en los interiores del apartamento.

La querella presentada ante DACO por los peticionarios alegaba la existencia de ciertas filtraciones de agua en el apartamento y mal funcionamiento del aire acondicionado. Según el expediente, las filtraciones fueron corregidas para

febrero de 1989. En lo que respecta al aire acondicionado, según las determinaciones de hechos de DACO, el peticionario no pudo demostrar que la compañía subcontratada por SYOCA para entregar el apartamento en condiciones aptas para los cambios de interiores, RB, fuera responsable del defecto por el cual se reclamaba. El peticionario tampoco demostró que el

apartamento, tal y como fue entregado por SYOCA, sufriera defectos o vicios de construcción.

La prueba demostró más bien que las alteraciones en el diseño de las terminaciones interiores del apartamento están directamente relacionadas a los vicios que se alegan. Más aún, según la resolución "[n]i la [sic] coquerelladas SYOCA, RB, RIAX y los coquerellados Ing. Luis Puig y Peter Rivera intervinieron en la modificación del sistema de aire acondicionado del apartamento del querellante. **Las modificaciones fueron realizadas por los arquitectos que el querellante contrató para las modificaciones efectuadas a la estructura**". [Énfasis nuestro]. Según explicamos, el propio Reglamento exime de responsabilidad al constructor o desarrollador cuando los defectos se deben a alteraciones. En su resolución de 4 de marzo de 1998 DACO expone que:

> La prueba presentada demostró que el querellante compró una propiedad a la cual le realizó cambios sustanciales y que **dichas obras contaron en todo momento con la supervisión directa de un profesional contratado por dicho querellante para cerciorarse de que las obras eran realizadas de conformidad con sus intereses**. Nótese que la prueba presentada demostró que el querellante no tan sólo contrató la modificación sustancial del interior del apartamento. Aceptó y pagó las obras según le fueron entregadas e introdujo cambios a los planos preparados por razones de estética y conveniencia. **Ni tan siquiera del testimonio**
>
> del **querellante se produce un recuento concreto de los defectos imputables a los querellados de epígrafe. Más aún, su propio perito concluye que las deficiencias del sistema de aire acondicionado son producto de unas modificaciones que debieron ser supervisadas adecuadamente por el supervisor de la obra.**
>
> ...el querellante no reclama por vicios de construcción bajo la norma de la Ley 130 de 13 de junio de 1967, según enmendada. En el caso que nos ocupa el querellante no adquirió un apartamento típico, sino una estructura en la cual se introdujeron cambios sustanciales, distinto de los diseños originalmente programados para la estructura. [Énfasis nuestro].

Nos parece evidente que la decisión de DACO en el caso que nos ocupa está sostenida por sus determinaciones sobre la prueba presentada. El peticionario no nos ha convencido de que haya otra prueba en el expediente que convierta en inaceptables las determinaciones de DACO, tomando siempre en cuenta la normativa sobre revisión de decisiones administrativas, tantas veces reiterada, según la cual, el tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una base racional respaldada por evidencia sustancial, para explicar la decisión administrativa. Misión Industrial de P. R. v. J.P. y A.A.A., 146 DPR 64 (1998); Rebollo vda. de Liceaga v. Yiyi Motors, res. a 13 de enero de 2004, 160 DPR ___, 2004 TSPR 2. Sabemos que corresponde a la parte que impugna la decisión demostrar que hay otra prueba en los autos administrativos que menoscaba la prueba impugnada al punto de derrotar la razonabilidad de la decisión y convertirla en arbitraria o caprichosa.[3]

---

[3]     Según la norma firmemente establecida por este Tribunal, los foros apelativos debemos conferir gran deferencia a las determinaciones de hechos de los foros administrativos, limitándose la revisión judicial a evaluar la razonabilidad de la decisión recurrida. Polanco López v. Cacique Motors, res. a 30 de junio de 2005, 2005 TSPR 96, 164 DPR ___; Cruz Negrón v. Administración de Corrección, res. a 28 de marzo de 2005, 2005 TSPR 34, 163 DPR ___; Misión Industrial de P.R. v. Junta de Planificación y A.A.A., 146 D. P.R. 64 (1998); Municipio de San Juan v. JCA, ARPE, 149 D.P.R. 263 (1999). Esta deferencia se fundamenta en el conocimiento especializado y la experiencia de las agencias y persigue evitar que el criterio del tribunal revisor sustituya el que ejerció la agencia administrativa basándose en ese conocimiento especializado. Cruz Negrón v. Administración de Corrección, supra; Misión Industrial de P.R. v. Junta de Planificación y A.A.A., supra, (1998); Oficina de Ética Gubernamental v. Nydia E. Rodríguez Martínez, res. a 1 de abril de 2003, 158 D.P.R. ___, 2003 TSPR 48; Misión Industrial de P.R. v. J. P. y A.A.A., 145 D.P.R 908, (1998). Es por eso que, de ordinario, los foros apelativos no debemos intervenir con las determinaciones de hechos de un organismo administrativo si éstas están apoyadas en la prueba que resulta del expediente considerado en su totalidad y si la decisión basada en esos hechos se ajusta

No encontramos que la agencia administrativa actuara en este caso de forma arbitraria, caprichosa o en abuso de su discreción.

Por eso, concluimos que el foro apelativo no cometió los errores apelados y concurrimos con la sentencia emitida.


Liana Fiol Matta
Jueza Asociada

---

a derecho. Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2175. Oficina de Ética Gubernamental v. Nydia E. Rodríguez Martínez, *supra*; Municipio de San Juan v. Junta de Calidad Ambiental, 152 D.P.R. 673, (2000); Misión Industrial de P.R. v. J.C.A. y A.A.A., 142 DPR 656, (1997); Misión Industrial de P.R. v. J.C.A, *supra*, (1998).