RAMÓN ALMONTE FONT y MYLEEN GRATACÓS, peticionarios, *v.* SERVICIOS Y OBRAS DEL CARIBE, INC., RB CONSTRUCTION CORPORATION RIAX CONSTRUCTION, CNA CASUALTY CO. e ING. JOSÉ PUIG, recurridos.

*Número:* CC-2000-785          *Resuelto:* 15 de septiembre de 2005

*Antonio Borrés Otero*, abogado de la parte peticionaria; *Severo Torres García, Rafael Mayoral Morales, Enrique Nassar Rizek* y *Guillermo Arbona Enríquez*, abogados de la parte recurrida.

## SENTENCIA

Por estar igualmente dividido el Tribunal, *se confirma la decisión del Tribunal de Apelaciones.*

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada Señora Fiol Matta emitió un voto concurrente. El Juez Presidente Señor Hernández Denton y el Juez Asociado Señor Rebollo López disintieron sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri y la Juez Asociada Señora Rodríguez Rodríguez no intervinieron.

(*Fdo.*) Aida Ileana Oquendo Graulau
*Secretaria del Tribunal Supremo*

— O —

Voto concurrente de la Jueza Asociada Señora Fiol Matta.

El Sr. Ramón Almonte Font y la Sra. Mayleen Gratacós recurren de la decisión del Tribunal de Apelaciones mediante la cual se denegó el recurso de revisión de su caso, y nos solicitan que revoquemos una resolución emitida por el Departamento de Asuntos del Consumidor (D.A.Co.) que desestimó su querella por vicios de construcción. Por las razones que exponemos a continuación, concurrimos con la sentencia dictada por este Tribunal como resultado del empate en los votos de los jueces participantes.

# I

El peticionario, Ramón Almonte Font, compró el 17 de marzo de 1988 un apartamento en el condominio Tenerife, ubicado en el sector El Condado. Este apartamento fue adquirido de la desarrolladora del proyecto, Servicios y Obras del Caribe, Inc. (SYOCA). El señor Almonte Font pactó con SYOCA ciertos cambios en el diseño interior original de dicho apartamento, tras lo cual SYOCA entregaría el apartamento sin terminaciones interiores. El señor Almonte Font recibió un crédito de $10,170 por razón de los cambios en la estructura.

Para diseñar los planos y supervisar los cambios, el peticionario contrató a la firma de arquitectos Sierra, Cardona y Ferrer. A su vez, SYOCA subcontrató a la compañía de construcción RB Construction Corporation (RB), constructora del proyecto Tenerife, para realizar las obras aquí pactadas. De esa forma, las obras conllevaban una coordinación entre los arquitectos contratados por el señor Almonte Font, SYOCA y RB.

RB ejecutó algunas de las obras rediseñadas por la firma de arquitectos contratada, incluyendo parte de la instalación de un nuevo sistema de aire acondicionado, seleccionado por el señor Almonte Font. Los planos para este nuevo sistema de aire acondicionado fueron diseñados para Sierra, Cardona y Ferrer por el Ing. Luis Puig —también recurrido en este recurso— quien también había diseñado los sistemas de aire acondicionado del resto del condominio. Este diseño preparado por el ingeniero Puig fue modificado durante la construcción del interior del apartamento. Entre las modificaciones, se cambiaron unas parrillas por razones estéticas y se instalaron unas lámparas en sustitución de la parrilla de retorno.

RB también tuvo a su cargo los trabajos de plomería, electricidad y demolición necesarios para permitir los cambios en los interiores del apartamento diseñados por Sie-

rra, Cardona y Ferrer. Para completar los trabajos comenzados por RB y hacer los trabajos de terminaciones interiores del apartamento, el peticionario contrató a RIAX Contractors Corp. (RIAX). Todas las obras realizadas por RIAX fueron supervisadas por el Arq. Iván Banuchi, quien fue contratado por el peticionario para sustituir a Sierra, Cardona y Ferrer. Las obras realizadas por RIAX fueron pagadas según fueron aprobadas por dicho arquitecto.

Una vez en posesión del apartamento, el señor Almonte Font comenzó a notar problemas de filtración de agua a través del ventanal del área de la sala y la pared del estudio. Según los planos originales del apartamento, este ventanal consistiría de puertas corredizas de cristal de 5′x 9′. Sin embargo, para el apartamento del peticionario se modificó el diseño y se instalaron, en vez, dos puertas de cristal centrales, rodeadas por piezas fijas de cristal en la parte inferior y en las partes laterales. El señor Almonte Font también percibió humedad en pisos y paredes, producto de la condensación del sistema de aire acondicionado, lo cual afectó la pintura del apartamento.

El peticionario se querelló en D.A.Co. contra la desarrolladora y vendedora, SYOCA, y contra la constructora, RB, por las filtraciones y el mal funcionamiento del acondicionador de aire, alegando que éstos constituían vicios de construcción al amparo de la Ley Núm. 130 de 13 de junio de 1967, según enmendada, 17 L.P.R.A. sec. 501 *et seq.*, conocida como la Ley de la Oficina del Oficial de Construcción (Ley Núm. 130). Luego, enmendó la querella para incluir al Ing. Luis Puig y a la constructora dedicada a trabajos interiores, RIAX, y su dueño el Sr. Peter Rivera.

D.A.Co. celebró unas vistas y finalmente, el 4 de marzo de 1998, diez años después de presentada la querella, la desestimó porque: (a) "de la prueba presentada no se establecen causas o reclamos ..."; (b) de la prueba presentada se demostró que el querellante hizo cambios sustanciales y que dichas obras contaron con la supervisión de un profe-

sional contratado para esos efectos, y (c) "no reclama por vicios de construcción bajo la norma de la Ley Número 130 del 13 de junio de 1967, según enmendada. En el caso que nos ocupa [el] querellante no adquirió un apartamento típico, sino una estructura en la cual se introdujeron cambios sustanciales, distintos a los diseños originalmente programados para la estructura." Apéndice, págs. 120–121.

El peticionario solicitó la revisión de esta determinación ante el Tribunal de Apelaciones el 31 de marzo de 1998. Ese tribunal denegó el recurso el 12 de julio de 2000, con el voto disidente de uno de los jueces del panel. El 22 de septiembre de 2000 se presentó el recurso de *certiorari* que nos ocupa y expedimos el auto el 13 de noviembre de 2000.([1])

## II

La agencia cuya decisión se cuestiona en este recurso, D.A.Co., tiene la encomienda de administrar e implantar la Ley Núm. 130. Esta legislación creó la Oficina del Oficial de Construcción para "facilitar a los compradores [de viviendas] vindicar los derechos que las leyes vigentes le concedían". *United Fed. Savings v. D.A.C.O.*, 111 D.P.R. 424, 425 (1981). Véase, además, *Quiñones v. San Rafael Estates, S.E.*, 143 D.P.R. 756, 767 (1997).([2]) D.A.Co. aprobó

---

([1]) Se alegó que el Tribunal de Apelaciones había errado: "... al resolver que la Ley Núm. 130 del 13 de junio de 1967, según enmendada, 17 L.P.R.A. [sec. 501 *et seq.*], no aplica a R.B. y RIAX; ... al resolver que los señores Peter Rivera y el ingeniero Puig, no están incluidos dentro de los términos urbanizador o constructor según definido por la Ley Núm. 130, supra[;] ... al resolver que aún si la Ley Núm. 130, supra, aplica a SYOCA [é]sta no es responsable por la instalación del sistema de acondicionador de aire; ... al resolver que DACO no erró al desestimar por no justificar la prueba presentada la concesión de un remedio; ... al resolver que no era necesario discutir los errores señalados en el recurso de revisión sobre el que DACO no permitiese prueba de daños y por desestimar la querella." Petición de *certiorari*, págs. 4–5.

([2]) Las funciones del Oficial de Construcción fueron asignadas originalmente a la Administración de Servicios del Consumidor, organismo creado mediante la Ley Núm. 148 de 27 de junio de 1968 (23 L.P.R.A. sec. 1001 *et seq.*). En 1973 se creó el Departamento de Asuntos del Consumidor (D.A.Co.) mediante la Ley Núm. 5 de 23

el Reglamento para Regular las Distintas Actividades que se Lleven a Cabo en el Negocio de la Construcción en Puerto Rico, Reglamento Núm. 2268 de 16 de septiembre de 1977 (Reglamento del Negocio de la Construcción), al amparo de la autoridad así conferida. Este reglamento faculta al Secretario de D.A.Co. a "investigar y adjudicar las querellas radicadas sobre prácticas indeseables en el negocio de la construcción; concediendo los remedios pertinentes conforme a derecho". Reglamento del Negocio de la Construcción, *supra*, Sec. 2(8), pág. 4. Véase *Quiñones v. San Rafael Estates, S.E.*, supra.

La Ley Núm. 130, en su segundo artículo, define el concepto "urbanizador o constructor" como "toda persona que se dedique al negocio de la construcción en calidad de empresario o principal responsable de la promoción, diseño, venta, construcción de obras de urbanización para vivienda, o de la construcción en grande escala de viviendas, bien del tipo individual o multipisos". 17 L.P.R.A. sec. 502(d).

Entre las "prácticas indeseables en el negocio de la construcción", la Ley Núm. 130 incluye: "(e) [dejar] de corregir un defecto de construcción en una vivienda según éste sea definido por el reglamento puesto en vigor por el Oficial de Construcción". Art. 9(e) de la Ley Núm. 130 (17 L.P.R.A. sec. 509(e)). A su vez, el Reglamento del Negocio de la Construcción define el término "defectos de construcción" como

> ... cualquier anormalidad, defecto, falta de accesorios, falla, deterioro prematuro, mal funcionamiento, inexactitud en las medidas o cualesquiera otra condición más allá de las tolerancias normales permisibles que pueda sufrir la estructura de vivienda o el área en que ésta esté enclavada o cualquier otro vicio o condición que exceda la medida de las imperfecciones que cabe esperar en una construcción sin que se pueda imputar a una fuerza mayor y/o fenómeno natural, *y no se deban al*

de abril de 1973 (3 L.P.R.A. sec. 341 *et seq.*) y se transfirieron a este departamento todas las funciones, los poderes y los deberes de la referida Administración.

*maltrato, alteraciones,* falta de mantenimiento, ni desgaste normal, siempre y cuando se notifique al urbanizador y/o constructor dentro del período de tiempo que [establece este Reglamento]. (Énfasis suplido.) Reglamento del Negocio de la Construcción, *supra,* Sec. 1(e), págs. 1–2.

La prueba presentada ante D.A.Co. demostró que RIAX no es un constructor o urbanizador, según definidos estos términos en la Ley Núm. 130. RIAX realizó trabajos de terminaciones interiores para el apartamento del señor Almonte Font y no actuó como "principal responsable" de la construcción, diseño, promoción o venta de "obras de urbanización para viviendas". El señor Rivera, dueño de RIAX, y el ingeniero Puig tampoco están incluidos en la definición de "constructor o urbanizador" bajo esta ley. El primero, por las mismas razones que aplican a RIAX, mientras que el ingeniero Puig fue contratado por los arquitectos del peticionario para diseñar el nuevo sistema de aire acondicionado, función que no se encuentra dentro de la definición de "urbanizador o constructor". A esto debemos añadirle que, según la prueba, los planos preparados por el ingeniero Puig para el nuevo sistema de aire acondicionado fueron alterados a través de todo el proceso de instalación, sin consultársele.

No hay duda de que SYOCA es un constructor o urbanizador según las disposiciones de la Ley Núm. 130. Además, SYOCA es el desarrollador del proyecto donde el peticionario adquirió el apartamento y fue quien vendió el apartamento al señor Almonte Font.

Ahora bien, SYOCA pactó con el señor Almonte Font la entrega del apartamento sin terminaciones interiores, para que éste pudiera hacerlas a su gusto. Para entregar el apartamento según pactado, SYOCA subcontrató a RB, una compañía que igualmente se dedica al negocio de la construcción. La labor de RB se limitó a comenzar el proceso de instalación de las máquinas de aire acondicionado y parte de los ductos (la coquerellada RIAX instaló las parrillas y otro tramo del ducto) y a realizar trabajos de plo-

mería, electricidad y demolición para permitir los cambios en los interiores del apartamento.

La querella presentada ante D.A.Co. por los peticionarios alegaba la existencia de ciertas filtraciones de agua en el apartamento y mal funcionamiento del acondicionador de aire. Según el expediente, las filtraciones fueron corregidas para febrero de 1989. En lo que respecta al acondicionador de aire, según las determinaciones de hechos de D.A.Co., el peticionario no pudo demostrar que la compañía subcontratada por SYOCA para entregar el apartamento en condiciones aptas para los cambios de interiores, RB, fuera responsable del defecto por el cual se reclamaba. El peticionario tampoco demostró que el apartamento, tal y como fue entregado por SYOCA, sufriera defectos o vicios de construcción.

La prueba demostró más bien que las alteraciones en el diseño de las terminaciones interiores del apartamento están directamente relacionadas a los vicios que se alegan. Más aún, según la resolución, "[n]i la[s] coquerelladas SYOCA, RB, RIAX y los coquerellados Ing. Luis Puig y Peter Rivera intervinieron en la modificación del sistema de aire acondicionado del apartamento del querellante. *Las modificaciones fueron realizadas por los arquitectos que el querellante contrató para las modificaciones efectuadas a la estructura*". (Énfasis suplido.) Apéndice, pág. 119. Según explicamos, el propio reglamento exime de responsabilidad al constructor o desarrollador cuando los defectos se deben a alteraciones. En su Resolución de 4 de marzo de 1998, D.A.Co. expone que:

> La prueba presentada demostró que el querellante compró una propiedad a la cual le realizó cambios sustanciales y que *dichas obras contaron en todo momento con la supervisión directa de un profesional contratado por dicho querellante para cerciorarse de que las obras eran realizadas de conformidad con sus intereses.* Nótese que la prueba presentada demostró que el querellante no tan sólo contrató la modificación sustancial del interior del apartamento. Aceptó y pagó las obras según le fueron entregadas e introdujo cambios a los planos pre-

parados por razones de estética y conveniencia. *Ni tan siquiera del testimonio del querellante se produce un recuento concreto de los defectos imputables a los querellados de epígrafe. Más aún, su propio perito (Ing. Osvaldo Marcano) concluye que las deficiencias del sistema de aire acondicionado son producto de unas modificaciones que debieron ser supervisadas adecuadamente por el inspector de la obra.*

... el querellante no reclama por vicios de construcción bajo la norma de la Ley 130 de 13 de junio de 1967, según enmendada. En el caso que nos ocupa el querellante no adquirió un apartamento típico, sino una estructura en la cual se introdujeron cambios sustanciales, distinto de los diseños originalmente programados para la estructura. (Énfasis suplido.) Apéndice, pág. 121.

Nos parece evidente que la decisión de D.A.Co. en el caso que nos ocupa está sostenida por sus determinaciones sobre la prueba presentada. El peticionario no nos ha convencido de que haya otra prueba en el expediente que convierta en inaceptables las determinaciones de D.A.Co., tomando siempre en cuenta la normativa sobre revisión de decisiones administrativas, tantas veces reiterada, según la cual el tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una base racional respaldada por evidencia sustancial, para explicar la decisión administrativa. *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64 (1998); *Rebollo v. Yiyi Motors*, 161 D.P.R. 69 (2004). Sabemos que corresponde a la parte que impugna la decisión el demostrar que hay otra prueba en los autos administrativos que menoscaba la prueba impugnada al punto de derrotar la razonabilidad de la decisión y convertirla en arbitraria o caprichosa.[3]

---

[3] Según la norma firmemente establecida por este Tribunal, los foros apelativos debemos conferir gran deferencia a las determinaciones de hechos de los foros administrativos, limitándose la revisión judicial a evaluar la razonabilidad de la decisión recurrida. *Polanco v. Cacique Motors*, 165 D.P.R. 156 (2005); *Cruz Negrón v. Administración*, 164 D.P.R. 341 (2005); *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263 (1999); *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64 (1998). Esta deferencia se fundamenta en el conocimiento especializado y la experiencia de las agencias y persigue evitar que el criterio del tribunal revisor sustituya el que ejerció la agencia administrativa basándose en ese conocimiento especializado. *Cruz Negrón v. Administración*, supra; *O.E.G. v. Rodríguez*, 159 D.P.R. 98 (2003); *Misión Ind. P.R. v. J.P.*, supra; *Misión Ind.*

No encontramos que la agencia administrativa actuara en este caso de forma arbitraria, caprichosa o en abuso de su discreción.

Por eso, concluimos que el foro apelativo no cometió los errores apelados y concurrimos con la sentencia emitida.

---

*P.R. v. J.C.A.*, 145 D.P.R. 908 (1998). Es por eso que, de ordinario, los foros apelativos no debemos intervenir con las determinaciones de hechos de un organismo administrativo si éstas están apoyadas en la prueba que resulta del expediente considerado en su totalidad y si la decisión basada en esos hechos se ajusta a derecho. Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2175. *O.E.G. v. Rodríguez*, supra; *Mun. de San Juan v. J.C.A.*, 152 D.P.R. 673, (2000); *Misión Industrial de P.R. v. J.C.A.*, supra; *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656 (1997).