Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| CONSEJO DE TITULARES DEL CONDOMINIO OCEAN SIXTEEN<br>Apelado<br><br>v.<br><br>ONE ALLIANCE INSURANCE, CORP.<br>Apelante | TA2025AP00136 | *Certiorari* procedente del Tribunal de Primera Instancia Sala de Fajardo<br><br>Civil Núm.<br>SJ2019CV00495<br><br>Sobre:<br>Seguros Incumplimiento Aseguradoras Huracanes Irma/María |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 1 de abril de 2026.

Comparece One Alliance Insurance Corporation (OAI o apelante), mediante recurso de *Apelación*, solicitando que revoquemos una *Sentencia Enmendada Nunc Pro Tunc* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI), notificada el 16 de junio de 2025. Mediante el referido dictamen, el foro primario ordenó a OAI al pago de la suma de DOS MILLONES NOVECIENTOS CINCUENTIUN MIL OCHOSCIENTOS VEINTE DÓLARES CON VEINTITRES CENTAVOS ($2,951,820.23) a favor del Consejo de Titulares del Condominio Ocean Sixteen (Consejo de Titulares o apelado), más QUINCE MIL DÓLARES ($15,000.00) por concepto de honorarios de abogado a favor de la representación legal del Consejo de Titulares.

Por los fundamentos que expresaremos a continuación, procede la confirmación del dictamen.

**I. Resumen del tracto procesal**

El asunto ante nuestra consideración inició propiamente con la presentación de la *Demanda* de epígrafe instada por el Consejo de Titulares contra OAI el 18 de enero de 2019 por incumplimiento de contrato de seguro y daños y perjuicios. El Consejo de Titulares hizo constar que OAI había expedido una póliza de seguro que cubría daños provocados al Condominio Ocean Sixteen por vientos de tormentas y huracanes. Dicha póliza se emitió el 6 de agosto de 2017 y vencía el 6 de agosto de 2018. Por ende, el seguro estaba vigente al momento del paso del Huracán María en septiembre de 2017. Luego de haberse realizado múltiples inspecciones para evaluar el alcance de los daños causados por el Huracán María, el Consejo de Titulares sometió su reclamación a OAI sustentada por informes periciales, los cuales estimaban pérdidas sustanciales en el Condominio. El Consejo alegó que OAI incumplió su deber de ajustar y pagar la pérdida dentro del término establecido por ley, de manera que incurrió en incumplimiento contractual y en una práctica desleal en el ajuste de la reclamación. Por lo tanto, el Consejo de Titulares reclamó el pago de la indemnización correspondiente por los daños sufridos junto con la imposición de costas, gastos y honorarios de abogado por temeridad.

Consecuentemente, el 25 de marzo de 2019, OAI presentó su *Contestación a Demanda,* en la cual negó haber incumplido con sus obligaciones contractuales según los términos y condiciones de la póliza. Además, rechazó el planteamiento del Consejo de Titulares de que había incurrido en actuaciones negligentes y dilatorias en el ajuste de la reclamación, por lo que negó temeridad de su parte. OAI alegó que, a pesar de discutir las diferencias de los estimados de reparación con los ajustadores del Condominio, no llevó a cabo el ajuste de la reclamación debido a que no había recibido todos los documentos necesarios por parte del Consejo de Titulares. Entre sus defensas afirmativas, sostuvo que hubo falta de mantenimiento del Condominio previo al paso del Huracán y que el Consejo de Titulares intentaba enriquecerse injustamente. Sin embargo, en

ningún momento alegó la existencia de fraude, daños preexistentes o doble compensación.

Luego de concluir la etapa inicial de alegaciones, comenzó el proceso de descubrimiento de prueba, el cual sufrió de múltiples interrupciones y dilaciones excesivas que retrasaron la resolución del caso. Cabe destacar que, a pesar de reiteradas intervenciones del TPI, OAI no entregó el informe de su perito oportunamente ni formuló una oferta transaccional formal. Dicho incumplimiento provocó que el caso se extendiera hasta el 2023, cuando el TPI estableció nuevas fechas para las deposiciones, el límite del descubrimiento de prueba, la Conferencia con Antelación a Juicio y el juicio.

Al día siguiente de concluir el descubrimiento de prueba, el 1 de junio de 2023, OAI notificó un requerimiento de admisiones. Dicho requerimiento incluyó información que no había sido intercambiada y anunció dos testigos no revelados previamente. El TPI dispuso que el requerimiento se tendría por no puesto el 22 de junio de 2023. Al solicitar la reconsideración del anterior dictamen el mismo día, OAI alegó por primera vez que el propósito del requerimiento de admisiones era corroborar que el Consejo de Titulares había cometido fraude en las reclamaciones presentadas. No obstante, el TPI declaró sin lugar la solicitud el 23 de junio de 2023.

La Conferencia con Antelación al Juicio fue celebrada el 21 de julio de 2023, en la cual se plantearon nuevos asuntos procesales. El Consejo arguyó que el borrador del *Informe de Conferencia con Antelación a Juicio* presentado el día anterior contenía una nueva teoría de fraude por parte de OAI para procurar la nulidad de la póliza, además de testigos que no habían sido anunciados anteriormente. En respuesta, OAI alegó que dichos asuntos se habían discutido anteriormente y que los testigos se limitarían a autenticar documentos. Con el fin de evitar la reapertura del descubrimiento de prueba y dilatar aún más el proceso, el Consejo decidió no objetar la introducción de la nueva teoría de OAI ni los testigos anunciados fuera del término de descubrimiento de prueba con la condición

de que se le permitiera anunciar prueba adicional para refutarlos. El TPI acogió la propuesta del Consejo y le concedió hasta el 25 de agosto de 2023 para presentar la prueba de refutación.

Luego de la Conferencia con Antelación al Juicio, el 29 de agosto de 2023, OAI le notificó al Consejo de Titulares mediante carta su determinación de anular y rescindir el contrato de seguro. Para justificar la cancelación de la póliza, OAI alegó que el Consejo de Titulares había reclamado el pago de daños que no fueron provocados por los vientos del Huracán María intencionalmente. OAI le exigió al Consejo de Titulares la devolución de ciento noventa y cuatro mil cuatrocientos dieciséis dólares ($194,416.00), correspondiente a la diferencia entre el adelanto de trescientos cincuenta mil dólares ($350,000.00) y la prima de ciento cincuenta y cinco mil quinientos ochenta y cuatro dólares ($155,584.00). Además, OAI le reclamó al Consejo de Titulares setenta y cinco mil dólares ($75,000.00) por gastos incurridos en ajustadores, peritos y honorarios de abogados.

Posteriormente, el 19 de octubre de 2023, OAI informó el fallecimiento de su perito mecánico, el Ingeniero Héctor Rodríguez, y solicitó autorización para su sustitución. A pesar de que el Ingeniero fallecido no había sido anunciado como testigo en ningún momento durante el trascurso del litigio ni en el *Informe de Conferencia con Antelación a Juicio*, el 27 de octubre de 2023, el TPI autorizó la sustitución solicitada y dispuso un nuevo calendario mediante orden.

Por consiguiente, OAI anunció como nuevo perito mecánico al Ingeniero Juan Luis García Blanco. Sin embargo, este nunca presentó un informe pericial. Cuando dicha omisión fue cuestionada, OAI informó que no utilizaría al perito, a pesar de que la designación había provocado la dilación de los procedimientos y la posposición del juicio.

Más adelante, el 11 de enero de 2024, el perito del Consejo de Titulares, el Ingeniero Otto González, presentó una comparecencia especial

para notificar al TPI que había sido suspendido por el Colegio de Ingenieros y Agrimensores de Puerto Rico por un término de cuatro meses. No obstante, el TPI dispuso en una vista sobre el estado de los procedimientos que la solicitud de sustitución del Consejo era académica, ya que la sanción disciplinaria concluiría antes de la vista en su fondo. El Ingeniero González fue reinstalado a mediados de 2024.

Tras varios incidentes procesales, se reactivó el calendario procesal y se reprogramó la Conferencia con Antelación a Juicio. En el *Informe de Conferencia con Antelación a Juicio* sometido por las partes el 9 de mayo de 2024, OAI anunció un total de treintaiún documentos como parte de su prueba documental. La segunda Conferencia con Antelación a Juicio se llevó a cabo el 9 de julio de 2024. Acto seguido, se dio la vista en su fondo, donde ambas partes presentaron sus testigos y peritos. Cabe destacar que OAI omitió voluntariamente presentar veinticuatro de los documentos que informó con anterioridad. OAI no ofreció explicación alguna para la omisión de la extensa prueba documental que notificó como parte esencial de su evidencia.

Por todo lo cual, el 16 de junio de 2025, el TPI emitió una *Sentencia Enmendada Nunc Pro Tunc* en la cual ordenó a OAI a pagar al Consejo de Titulares la suma de DOS MILLONES NOVECIENTOS CINCUENTIUN MIL OCHOSCIENTOS VEINTE DÓLARES CON VEINTITRES CENTAVOS ($2,951,820.23), así como las costas del litigio, siempre que el Consejo de Titulares presentara un memorando de costas oportunamente. En adición, por OAI haber obligado innecesariamente al Consejo de Titulares a incurrir en recursos y esfuerzo para litigar el caso hasta su final cerca de siete años desde el paso del Huracán María en Puerto Rico y por ocupar injustificadamente el calendario judicial a los fines de evadir su responsabilidad contractual, el TPI determinó que OAI exhibió conducta litigiosa temeraria, por lo que le impuso la suma de QUINCE MIL DÓLARES

($15,000.00) en honorarios de abogado a favor de la representación legal del Consejo de Titulares.

Inconforme con la anterior determinación del TPI, el 16 de julio de 2025, OAI acudió ante nosotros mediante recurso de *Apelación* señalando la comisión de los siguientes errores:

> **PRIMER ERROR:** Erró al TPI al no decretar que el demandante cometió fraude en su reclamación.
> **SEGUNDO ERROR:** Erró el TPI al encontrar temerario a la parte aquí compareciente.
> **TERCER ERROR:** Erró el TPI al no considerar la existencia de daños preexistentes en el inmueble.
> **CUARTO ERROR:** Erró el TPI al emitir sentencia por la suma de $2,951,820.23 sin tener prueba documental y testifical suficiente que corroborara y sustentara dicha compensación.
> **QUINTO ERROR:** Erró el TPI al considerar las mejoras como partidas cubiertas en la póliza.
> **SEXTO ERROR:** Erró el TPI al aplicar la presunción dispuesta en la Regla 304 (5) en contra de la parte demandada.

## II. Exposición de Derecho

### A. Fraude

La Regla 6.3 de Procedimiento Civil, 32 LPRA Ap. V, establece las distintas defensas que puede invocar un demandado en su alegación responsiva. Una defensa afirmativa es la afirmación que hace el demandado con hechos o argumentos que, de ser ciertos, derrotan la reclamación del demandante, aunque fueran aceptadas como correctas todas sus alegaciones. *Díaz Ayala et al. v. E.L.A.*, 153 DPR 675, 697 (2001); R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., Puerto Rico, LexisNexis, 2017, pág. 290. Es decir, "[s]on defensas que principalmente comprenden materia de naturaleza sustantiva y/o materia constitutiva de excusa por la cual la parte demandada no deba responder a las reclamaciones instadas en su contra". *Díaz Ayala v. et al. v. E.L.A.*, supra, pág. 695.

La Regla 6.3 de Procedimiento Civil, *supra,* en lo pertinente, dispone:

> (1) Al responder a una alegación, las siguientes defensas deberán expresarse afirmativamente:
> [...]
> (j) Fraude.
> Estas defensas deberán plantearse en forma clara, expresa y específica al responder a una alegación o se tendrán por renunciadas, salvo la parte advenga en conocimiento de la

existencia de la misma durante el descubrimiento de prueba, en cuyo caso deberá hacer la enmienda a la alegación pertinente. 32 LPRA Ap. V, R. 6.3.

Según la Regla 7.2 de Procedimiento Civil, *supra*, ¨[e]n todas las aseveraciones de fraude [...], las circunstancias que constituyen el fraude [...] deberán exponerse detalladamente¨.

El Artículo 27.180 del Código de Seguros de Puerto Rico, 26 LPRA sec. 2720 establece que ¨[c]ualquier persona que con intención y a sabiendas incurriera en cualquiera de las [siguientes] prácticas se considerará que ha cometido fraude [...]¨ ante una compañía de seguro:

> (1) Presentar una reclamación falsa o fraudulenta, o alterar u omitir información o cualquier prueba en apoyo de la misma, para el pago de una pérdida con arreglo a un contrato de seguro; o
> (2) Ayudar o participar en la presentación de una reclamación fraudulenta, o alterar u omitir información o cualquier prueba en apoyo de la misma, para el pago de una pérdida con arreglo a un contrato de seguro; o
> (3) Preparar, hacer, suscribir, alterar, omitir, ayudar o participar en preparar, hacer, suscribir, alterar, u omitir cualquier cuenta, certificado, declaración jurada, prueba de pérdida u otro documento o escrito falso con intención de que el mismo se presente o utilice en apoyo de dicha reclamación.
> (4) Presentar una reclamación que afecte el derecho de subrogación que posea un asegurador para recobrar cantidades pagadas con arreglo a un contrato de seguro. Se entenderá por derecho de subrogación, el derecho que tiene un asegurador de recobrar los daños que ha sido llamado a pagar a un asegurado bajo su póliza. Dicho derecho surge por operación de ley cuando el asegurador hace un pago al asegurado.
> (5) Presentar más de una reclamación por un mismo daño, pérdida o servicio sobre la misma propiedad o persona asegurada, excepto en el caso de los seguros de vida. 26 LPRA sec. 2720.

Según discutido por el Tribunal Supremo de Puerto Rico, ¨el fraude no se presume y debe probarse mediante prueba clara, robusta y convincente, y no por inferencias, deducciones o meras conjeturas¨. *McNeil Healthcare, LLC v. Municipio de Las Piedras*, 206 DPR 391, 427 (2021).

### B. Honorarios de abogado por temeridad

La Regla 44.1(d) de Procedimiento Civil, *supra*, dispone que en caso de que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle el pago de una suma por concepto de honorarios de abogado que ese foro considere corresponden a tal conducta. 32 LPRA Ap. V, R. 44.1(d). La temeridad se define como aquella

conducta que permita que se celebre o se prolongue un litigio innecesariamente o que obliga a otra parte a litigar por su contumacia u obstinación. *Jarra Corporation v. Axxis Corporation*, 155 DPR 764, 779 (2001); *Muñiz Burgos, Inc. v. Mun. de Yauco*, 187 DPR 665, 691–692 (2013). Se trata de

> una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con gravamen a veces exorbitantes para su peculio. H. Sánchez Martínez, *Rebelde sin costas*, Año 4 (Núm.2) Boletín Judicial (abril-junio 1982); *Oliveras, Inc. v. Universal Ins. Co.*, 141 DPR 900, 935 (1996).

El propósito de la imposición de honorarios por temeridad es penalizar a la parte "que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999); *Ramírez v. Club Cala de Palmas*, 123 DPR 339, 349–350 (1989); *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987); *C.O.P.R. v. S.P.U.*, 181 DPR 299, 341–342 (2011). Una vez el Tribunal determina que una parte incurrió en conducta temeraria, procede la imposición de los honorarios de abogado a favor de la otra parte. *P.R. Oil Co., Inc. v. Dayco Prod., Inc.*, 164 DPR 486, 511 (2005); *Jarra Corp. v. Axxis Corp.*, supra, pág. 779.

Para discernir cuál es la cuantía apropiada a imponer por la temeridad, el nuestro Tribunal Supremo ha identificado algunos criterios: la naturaleza del litigio, las cuestiones de derecho planteadas, la cuantía en controversia, el tiempo invertido, los esfuerzos y actividad profesional que hayan tenido que desplegarse junto con la habilidad y reputación de los abogados. En todo caso, el grado o intensidad de la conducta temeraria o frívola es el criterio o factor determinante y crítico. *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 738 (1990). A su vez, la concesión de honorarios de abogado a favor de una parte es una sanción adjudicativa que

procura disuadir la temeridad en la atención de los pleitos en el foro judicial. La fijación de la cuantía por los daños probados, así como la imposición de honorarios de abogado, descansan en la sana discreción del foro sentenciador o de la agencia. *P.R. Oil Co., Inc. v. Dayco Prod., Inc.*, supra, pág. 511; *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 DPR 38, 40 (1962). Esas determinaciones no serán alteradas por los tribunales apelativos, salvo que medie abuso de discreción o no sean proporcionadas a las circunstancias del caso. *Quiñones v. San Rafael Estates*, 143 DPR 756, 777 (1997).

### C. Apreciación de la prueba

La Regla 42.2 de Procedimiento Civil, *supra*, dispone lo siguiente:

> En todos los pleitos, el tribunal especificará los hechos probados, consignará separadamente sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda. [...] Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. [...] 32 LPRA Ap. V, R. 42.2.

Comúnmente, a raíz de dicha norma, los foros apelativos no debemos intervenir ni alterar innecesariamente las determinaciones de hecho formuladas por el TPI "luego de admitir y aquilatar la prueba presentada en el juicio". *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 65 (2009). No podemos "descartar y sustituir las determinaciones tajantes y ponderadas del foro de instancia" por nuestra propia apreciación a base de un examen del expediente del caso. *Íd.*, págs. 65-66.

Sabido es que, salvo que exista un error manifiesto o que el tribunal sentenciador haya actuado movido por prejuicio, parcialidad o pasión, no intervendremos con sus determinaciones de hechos. *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 987 (2010). Mediante esta norma de deferencia, se impone respeto a la evaluación que hace el TPI al aquilatar la credibilidad de un testigo, pues es dicho foro quien está en mejor posición para hacerlo. *Íd.* Es el foro primario quien tiene la oportunidad de escuchar a los testigos mientras declaran y así puede apreciar su "demeanor". *Colón v. Lotería*, 167

DPR 625, 659 (2006). Es dicho foro quien debe adjudicar los conflictos de prueba. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009).

### D. Presunción adversa

Según la Regla 301(a) de Evidencia, 32 LPRA Ap. VI, una presunción es "una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción". La parte en contra de quien se establezca la presunción tendrá "el peso de la prueba para demostrar la inexistencia del hecho presumido". Regla 302 de Evidencia, *supra*. Una de las presunciones controvertibles es que "[t]oda evidencia voluntariamente suprimida resultará adversa si se ofreciere". Regla 304 (5) de Evidencia, *supra*.

Al respecto, nos comenta el Profesor Emmanuelli que, por razones lógicas, se presume que una parte presentará toda la prueba que le favorezca por lo que se estima que, si no actúa de conformidad con ello, lo que le motiva es que la prueba no le favorece. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño,* 4ta ed., San Juan, Ediciones SITUM, 2015, pág. 171. Para aplicarla, habrá que establecer que la supresión de la prueba fue voluntaria; determinar "si la negligencia excusable puede dar discreción" para no aplicar la regla; y considerar que, al ser controvertible, la parte perjudicada puede presentar prueba en contrario. R. Emmanuelli Jiménez, *op. cit.,* pág. 172.

### III. Aplicación del Derecho a los hechos

El primer y tercer error señalados por OAI están estrechamente relacionados, por lo que se discutirán en conjunto. La alegación de fraude no fue planteada por OAI en su *Contestación a Demanda* según requerido por la Regla 6.3 de Procedimiento Civil, *supra*. OAI intentó plantear la defensa afirmativa por primera vez luego de que había concluido el descubrimiento de prueba. Por tanto, la defensa afirmativa de fraude quedó renunciada y no procede. En adición, OAI no evidenció que el Consejo de Titulares haya incurrido en los actos que constituyen fraude descritos en el

Artículo 27.180 del Código de Seguros con prueba clara, robusta y convincente. Al contrario, OAI infirió que la cuantía que se le exigió en la *Sentencia Nunc Pro Tunc* era improcedente por ser distinta al estimado preliminar reclamado en la demanda. Sin embargo, el Consejo de Titulares consignó la cantidad final reclamada en el *Informe de Conferencia con Antelación a Juicio* y la reiteró en el juicio, la cual fue producto de múltiples reuniones técnicas entre los peritos de las partes, por lo que el TPI le dio entera credibilidad. Por otro lado, OAI sustentó su alegación de daños preexistentes en el Condominio Ocean Sixteen en un informe pericial del 2012, en el cual se concluyó que sus facilidades estaban en un estado de ruina funcional debido a falta de mantenimiento y cuidado efectivo. No obstante, el Consejo de Titulares demostró que las deficiencias señaladas fueron reparadas antes del paso del Huracán María con un informe preparado por Risk Consultants, Inc. en julio de 2017, en el cual se describió al condominio como estando en buena condición y plenamente asegurable. Esto derrota la teoría de fraude por daños preexistentes de OAI.

En cuanto el segundo error señalado, OAI alegó en su *Apelación* que el TPI le imputó temeridad por defender su postura. No le asiste la razón, ya que su contumacia y obstinación ante la reclamación obligó al Consejo de Titulares a asumir las molestias, gastos, trabajo e inconveniencias de un pleito para poder recibir la cuantía a la cual tiene derecho como asegurado de la compañía de seguro. Además, según discutido anteriormente, OAI dilató los procesos reiteradamente de manera indebida, causando que el pleito se extendiera por más de seis años. Esto provocó que el Consejo de Titulares no tuviera los medios necesarios para financiar las reparaciones de los daños provocados por el Huracán María luego de ocho años desde su paso por la isla. El TPI no abusó de su discreción al imponerle quince mil dólares ($15,000.00) en honorarios de abogado a OAI, ya que dicha cantidad es proporcionada a las circunstancias del caso. Por lo tanto, el TPI actuó

correctamente al imputarle dicha cuantía en honorarios de abogado por temeridad a OAI.

El cuarto error señalado por OAI plantea que el TPI no tuvo prueba suficiente que fundamentara la suma que le fue impuesta en la *Sentencia Enmendada Nunc Pro Tunc*. Este error pretende cuestionar la apreciación de la prueba realizada por el Juez de Instancia. Siendo eso así, le correspondía al apelante presentar reproducir la prueba oral, lo cual no hizo. Sin embargo, el TPI dispuso en la *Sentencia* que la prueba presentada por el Consejo de Titulares ¨fue técnicamente sólida, metodológicamente rigurosa y ampliamente documentada, sin que [OAI] lograra refutarla efectivamente en sus elementos esenciales¨[1]. En particular, el TPI expuso lo siguiente sobre su apreciación de la prueba:

> [E]ste Tribunal rechaza las alegaciones de One Alliance respecto a que el Consejo no presentó prueba suficiente para establecer los daños causados por el huracán María. Contrario a las representaciones de la parte demandada, el récord evidencia que el Consejo presentó prueba pericial exhaustiva, documentación técnica detallada, facturas de reparaciones ejecutadas, contratos con especialistas, y testimonio directo de testigos presenciales. La alegación de insuficiencia probatoria carece de fundamento y no refleja la realidad del récord.

En particular, el Consejo de Titulares hizo constar que el Ingeniero González excluyó de la reclamación toda partida que demostrara indicios de condición preexistente, deterioro natural o corrosión ajena al paso del Huracán María para llegar a la cuantía final de la pérdida. El Ingeniero González concluyó que los daños ascendían a tres millones trescientos un mil ochocientos veinte dólares con veintitrés centavos ($3,301,820.23), de los cuales se descontó trescientos cincuenta mil dólares ($350,000,000.00) por el adelanto de OAI para fijar la cuantía final de dos millones novecientos cincuentiún mil ochocientos veinte dólares con veintitrés centavos ($2,951,820.23). El TPI llevó a cabo la valoración y ajuste de la reclamación dentro de la discreción que le reconoce nuestro ordenamiento jurídico. En ausencia de error

---

[1] *Sentencia Enmendada Nunc Pro Tunc,* Entrada 341 de SUMAC (TPI), pág. 35.

manifiesto, prejuicio, parcialidad o pasión por el TPI, no nos corresponde intervenir con sus determinaciones de hechos.

El quinto error señalado también trata sobre la apreciación de la prueba por el TPI. OAI alegó que el reemplazo de todos los componentes técnicos de los elevadores con piezas nuevas y más modernas constituye una mejora que no está cubierta por la póliza del seguro. No obstante, el Consejo de Titulares sostuvo que dichos trabajos eran reparaciones necesarias debido a que los componentes originales ya no existían para poder llevar a cabo la sustitución con piezas idénticas. Según dispuesto por el foro primario, ¨la prueba pericial, documental y testifical establece de manera convincente que se trató de reparaciones necesarias de sistemas afectados por el huracán María, cuyos componentes originales ya no estaban disponibles en el mercado¨[2]. En específico, el Consejo de Titulares aclaró a través del Ingeniero Feliciano que el término ¨modernización¨ en el título de la propuesta para la sustitución de los elevadores es un término técnico que se utiliza en la ingeniería para referirse a la instalación de componentes funcionalmente equivalentes a los originales que el mercado ofrece en el momento de la reparación. La cubierta de la póliza cubría daños provocados a los elevadores y su sustitución era necesaria para devolverlos a su condición operativa previa. Similar a la discusión del error anterior, el TPI actuó correctamente al aquilatar la prueba presentada dentro de su discreción, por lo que no debemos modificar sus determinaciones de hechos.

Para fundamentar el sexo error señalado, OAI alegó que la ausencia de ciertos documentos en su desfile de prueba no constituye supresión dolosa, oculta o maliciosa, ya que eran redundantes o no esenciales para sostener sus argumentos. Sin embargo, no presentar los documentos en el juicio que había anunciado como prueba en el *Informe de Conferencia con Antelación a Juicio* constituye una omisión voluntaria, por lo cual le aplica

---

[2] *Sentencia Enmendada Nunc Pro Tunc,* Entrada 341 de SUMAC (TPI), pág. 39.

la presunción adversa. Por ende, se entiende que la prueba que OAI no presentó le es desfavorable. OAI no pudo demostrar la inexistencia del hecho presumido ni negligencia excusable con prueba en contrario, por lo que procede mantener la presunción en su contra.

## IV. Parte dispositiva

Por los fundamentos anteriormente expuestos, *confirmamos* la *Sentencia Enmendada Nunc Pro Tunc* del Tribunal de Primera Instancia que ordena a One Alliance Insurance, Corp. al pago de la suma de DOS MILLONES NOVECIENTOS CINCUENTIÚN MIL OCHOCIENTOS VEINTE DÓLARES CON VEINTITRÉS CENTAVOS ($2,951,820.23) a favor del Consejo de Titulares, más QUINCE MIL DÓLARES ($15,000.00) por concepto de honorarios de abogado a favor de la representación legal del Consejo de Titulares.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones